FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

FEB 15 2023

TAMMY H. DOWNS, CLERK
By: _____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

UNITED SECURITY HEALTH AND CASUALTY                    PLAINTIFF
INSURANCE COMPANY

v.                          No. 2:23cv35-BSM

DEONTA MILLER, LECEEDRIC HUNTER, TERESA HAWKINS,        DEFENDANTS
As Administratrix for the ESTATE of JEREMY TILSON, Deceased,
DELANE DEVON BEDFORD, CARLTON OTEY, and TEKILLIA HAMMOND

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW the Plaintiff United Security Health and Casualty Insurance Company ("United Security"), by and through its attorneys, Matthews, Sanders & Sayes, P.A., and for its Complaint for Declaratory Judgment, states:

1. United Security is an Illinois corporation authorized to do business in the State of Arkansas with its principal address located at 6640 S. Cicero Avenue, Bedford Park, Illinois 60638.

2. Upon information and belief, Separate Defendant Deonta Miller ("Miller") was at all times relevant hereto a resident of Phillips County, Arkansas, whose last known address is 401 W. Cleburne, West Helena, Arkansas 72390.

3. Upon information and belief, Separate Defendant LeCeedric Hunter ("Hunter") was at all times relevant hereto a resident of Phillips County, Arkansas, whose last known address is 248 N. Coanza, West Helena, Arkansas 72390.

4. Upon information and belief, Separate Defendant Teresa Hawkins ("Hawkins") is the duly court appointed Administratrix of the Estate of Jeremy Tilson, Deceased, who was at all

This case assigned to District Judge _Miller_
and to Magistrate Judge _Kuen_

times relevant hereto a resident of Phillips County, Arkansas. Hawkins last known address is #10

Wooddale, Helena, Arkansas 72342.

5.      Upon information and belief, Separate Defendant Delane Devon Bedford

("Bedford") was at all times relevant hereto a resident of Phillips County, Arkansas, whose last

known address is 442 N. Village Drive, West Helena, Arkansas 72390.

6.      Upon information and belief, Separate Defendant Carlton Otey ("Otey") was at all

times relevant hereto a resident of Phillips County, Arkansas. Upon information and belief, Otey

can be served via the Arkansas Department of Corrections, North Central Unit, 10 Prison Circle,

Calico Rock, Arkansas 72519.

7.      Upon information and belief, Separate Defendant Tekillia Hammond

("Hammond") was at all times relevant hereto a resident of Phillips County, Arkansas, whose last

known address is 326 N. Sixth Street, West Helena, Arkansas 72390.

8.      Hammond was at all times pertinent hereto the owner of a motor vehicle, a 2008

Cadillac Escalade EXT, being operated by Otey, and which was involved in a motor vehicle

accident on or about September 18, 2020, in St. Charles, Arkansas County, Arkansas.

9.      The motor vehicle owned by Hammond and driven by Otey at the time of this

accident was insured on a personal automobile policy issued by United Security (Policy No. 18-

04-0011823-00), and in effect at the time of this accident. A certified copy of the policy and

declarations page is attached hereto and incorporated by reference as Exhibit A.

10.      The policy names Hammond as the sole named insured, the sole driver, and the sole

household resident. *Id.* The policy does not list or identify Otey as an additional driver, additional

insured, or household resident. *Id.*

2

11.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

12.     This is an action for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, et seq.

13.     Jurisdiction in this Court is proper as complete diversity exists between the Plaintiff and the Defendants, and the amount in controversy exceeds $75,000.00 without aggregation as set forth herein and as alleged in the underlying related state court action[1] and a wrongful death claim arising from said accident on behalf of the Estate of Jeremy Tilson, Deceased.[2]

14.     In addition to the damages sought in those cases and claims, the policy states that, "*in addition to [its] limit of liability,*" United Security "will pay on behalf of an insured person, reasonable expenses incurred at our request." Ex. A (emphasis added). It is anticipated that the cost of defending the underlying claims and causes of action will exceed $25,000.00 and, therefore, adds to the alleged amount in controversy and satisfies the required amount required for jurisdiction in this Court.

15.     On or about September 18, 2020, Otey was driving the insured vehicle, a 2008 Cadillac Escalade EXT, with Defendants Miller, Hunter, Bedford and Tilson riding as passengers. Exhibit D, attached hereto and incorporated by reference.

16.     At the time of this occurrence, Otey was driving the insured vehicle without Hammond's express permission. In fact, Hammond filed a stolen vehicle report stating that she

---

[1] *Deonta Miller and LeCeedric Hunter vs. Carlton Otey*, Phillips County Circuit Court No. 54CV-21-164. See Exhibit B, attached hereto and incorporated by reference.

[2] *In re Estate of Jeremy Tilson, Deceased*, Phillips County Circuit Court No. 54PR-20-77. See Exhibit C, attached hereto and incorporated by reference.

never Otey permission to drive her vehicle. See Exhibit E, attached hereto and incorporated by reference.

17.     In the course of operating the stolen insured vehicle on the day of the accident without Hammond's express permission, Otey was actively fleeing law enforcement,[3] a felony, to which he has pled guilty.

18.     As a proximate cause of Otey's felonious conduct, he along with Miller, Hunter, Bedford and Tilson sustained injuries. *Id.* The injuries to Tilson resulted in his death. Exs. C and D.

19.     Miller and Hunter claim to have suffered severe bodily injuries and incurred medical bills from the accident. Ex. B. Specifically, Miller and Hunter allege entitlement to damages for, *inter alia*, sever injuries to their head, neck, foot, arm, shock to their entire nervous system, past, present and future excruciating pain, suffering, and mental anguish resulting in past and future medical expenses. *Id.*, at ¶¶ 5 & 6. Miller and Hunter further allege entitlement to these damages in a sum more than that required for federal court jurisdiction in diversity cases. *Id.*, at *ad damnum* clauses (c) & (d).

20.     Upon information and belief, Hawkins claims damages for the wrongful death of her Decedent, Jeremy Tilson, after Tilson was ejected from the insured vehicle while Otey was fleeing law enforcement when the subject accident occurred. Exs. C and D.

21.     Bedford has also submitted a claim to the Plaintiff for his bodily injuries and continuing damages that he sustained in the accident caused by Otey's felonious conduct.

---

[3] Ex. D.

22.     Plaintiff's exposure for the defense and indemnification of the underlying

individual claims is expected to exceed the required jurisdictional minimums.

23.     Following United Security's investigation, it determined that there is no coverage

under the policy for the claims arising from the aforementioned accident. United Security seeks a

declaration of same from this Court as set forth below.

24.     The policy provides liability coverage subject to the terms, conditions, and

exclusions set forth therein. Specifically, and in pertinent part, the policy states:

### PART A- LIABILITY COVERAGE

### INSURING AGREEMENT

**We** will pay damages for **bodily injury** and **property damage** for which an
**insured person** becomes legally responsible because of an **accident**.

\*\*\*

**We** have not duty to defend any suit or settle any claim for **bodily injury** or
**property damage** not covered under this policy.

\*\*\*

When used in this Part A:
**Insured person** means:
  I.    with respect to your **covered auto**:
        a.  **you;**
        b.  a **family member;**
        c.  any other **person** using your **covered auto** to whom the **named insured**
            has given expressed permission, provided the use is within the scope of
            such permission. Any coverage that **we** provide to a **person** using **your**
            **covered auto** with **your** consent shall be excess to any other insurance
            coverage available to the **person** using **your covered auto** with **your**
            consent. Any **person** using **your covered auto** without **your** consent or
            outside the scope of that consent shall only be afforded coverage under
            this policy if mandated by a **Compulsory Insurance Law** of the state
            in which the **accident** occurs and then only to the extent mandated by
            law with such coverage being excess to any other insurance coverage
            available to the **person** using **your covered auto**.

\*\*\*

5

**EXCLUSIONS THAT APPLY TO PART A-LIABILITY COVERAGE**

**READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART A.**

\*\*\*

**We** do not provide Liability Coverage and **we** have no duty to settle or defend any claim or lawsuit:

\*\*\*

5.      For **bodily injury** or **property damage** arising out of any **person's** use of a vehicle without the owner's expressed permission or outside the scope of that consent.
\*\*\*

25.      For any loss arising directly or indirectly out of instances, occurrences or allegations of criminal activity by **you** or a **relative** or any **insured person**.
\*\*\*

26.      For any **bodily injury** or **property damage** caused after an **insured person** fails to stop the **auto** he/she is driving after being directed to stop by a law enforcement officer. This includes any situation in which an **insured person** is fleeing from a law enforcement officer.
\*\*\*

Ex. A. (bold emphasis in original).

25.      Based upon the above-quoted policy language and exclusions, which are valid exclusions under Arkansas law, there is no coverage under the policy for any damages arising out of the September 18, 2020 motor vehicle accident, including any claims made by and against the Defendants because Otey did not have Hammond's express permission to drive her vehicle and because Otey was actively fleeing law enforcement, a felony offense to which he has pled guilty, when the subject accident from which the alleged injuries, death, and damages occurred.

26.      The underlying claims and state court action seek recovery of compensatory damages arising from the accident on September 18, 2020, and are specifically excluded from coverage under the policy. Ex. A.

27.     United Security seeks declaratory relief from this Court that the policy at issue does not apply to the underlying accident, claims, and any current or future state court action arising out of the aforementioned accident. Specifically, United Security requests this Court declare that there is no coverage under the aforementioned policy for any damages sustained by and alleged against any party, including any Defendant in the case at bar, arising out of the motor vehicle accident on September 18, 2020 involving the insured vehicle and Hunter, Miller, Tilson, Beford, and Otey, and further seeks a declaration that there is no duty on the part of United Security to defend or indemnify any of the Defendants herein, and any claim or suit filed by or against them to date or which may be filed by or against them in the future, nor a duty to pay any settlement reached or Judgment obtained in any court action.

28.     United Security reserves the right to amend its Complaint for Declaratory Judgment and to assert any and all policy defenses or defenses at law available to it not specifically plead herein.

29.     United Security demands trial pursuant to Rule 38 of the Federal Rules of Civil Procedure of all controverted issues of fact arising herein.

WHEREFORE, premises considered, Plaintiff United Security Health and Casualty Insurance Company prays for Declaratory relief as set forth herein, for its costs incurred in prosecuting this action, and for any and all other relief to which it may be entitled.

Respectfully submitted,

Matthews, Sanders & Sayes, P.A.
825 West Third Street
Little Rock, AR 72201
PH 501-378-0717 | FX 501-375-2924
msayes@msslawfirm.com
jsayes@msslawfirm.com

By:

MEL SAYES ABN 77120
JAMES T. SAYES ABN 2011191
*Attorneys for Plaintiff United Security Health
and Casualty Insurance Company*

8

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

UNITED SECURITY HEALTH AND CASUALTY                    PLAINTIFF
INSURANCE COMPANY

v.                          No. *2:23cv35-BSM*

DEONTA MILLER, LECEEDRIC HUNTER, TERESA HAWKINS,           DEFENDANTS
As Administratrix for the ESTATE of JEREMY TILSON, Deceased,
DEVON BEDFORD, CARLTON OTEY, and TEKILLIA HAMMOND

**EXHIBIT A TO COMPLAINT FOR DECLARATORY JUDGMENT**



UNITED SECURITY
HEALTH AND CASUALTY INSURANCE COMPANY
SIMUL. NOS VIAM INVENIENT
TOGETHER WE WILL FIND A WAY

September 29, 2022

To Whom It May Concern:

This is to certify that policy number 18-04-0011823-00 – TEKILLIA HAMMOND issued with effective dates from 07/07/2020 to 01/07/2021. The policy limits are:

| | |
|---|---|
| Bodily Injury Liability | $25,000 per person / $50,000 per accident |
| Property Damage Liability | $25,000 per accident |
| Uninsured Motorists Bodily Injury | $25,000 per person / $50,000 per accident |
| Uninsured Motorists Property Damage | $25,000 per accident |
| | V1 - $0 ded |
| Underinsured Motorists Bodily Injury | $25,000 per person / $50,000 per accident |
| Comprehensive | V-1 $500 ded |
| Collision | V1 - $500 ded |
| Rental Reimbursement | V1 - $20 per day Max 21 days |

Enclosed is a true and accurate copy of the policy and declarations page for 18-04-0011823-00.

Sincerely,

Heather Fallin
Vice President - Personal Lines Underwriting
First Chicago Insurance Company

POLICY NUMBER: 18-04-0011823-00

AGENT NUMBER: 0010368-00-00

**COVERAGE PROVIDED BY**
**UNITED SECURITY HEALTH AND CASUALTY**
**INSURANCE COMPANY**
**NAIC 81108**
*ADMINISTRATIVE OFFICE*
3310 West End Ave Suite 570
NASHVILLE, TN 37203

FROM: 10:05 PM 07/07/2020

TO:  12:01 AM 01/07/2021
DATE PROCESSED:  07/07/20
ENDORSEMENT DATE:  07/07/20

PAGE: 1 OF 1

## POLICY DECLARATIONS

This declaration page with policy provisions and all other applicable endorsements complete your policy.

TEKILLIA HAMMOND
326 N SIXTH
WEST HELENA, AR 72390-2525

AGENCY:JUPITER AUTO INSURANCE
3310 WEST END AVENUE SUITE 570
NASHVILLE, TN 37203
(855) 444-4341

RE:      TEKILLIA HAMMOND
326 N SIXTH
WEST HELENA, AR 72390-2525

**DRIVER AND HOUSEHOLD RESIDENTS**

| NAME | DATE OF BIRTH | GENDER | MARITAL STATUS | TYPE OF DRIVER | POINTS |
|------|---------------|--------|----------------|----------------|--------|
| TEKILLIA HAMMOND | | F | SINGLE | INSURED | 0 |

**DESCRIPTION OF VEHICLE**

| UNIT | YEAR | MAKE | MODEL | VIN | SYM | TERR | ZIP | CLASS | USE |
|------|------|------|-------|-----|-----|------|-----|-------|-----|
| 1 | 2008 | Cadillac | Escalade | 1GYEC63868R202604 | 310 / 490 | 8 | 72390 | SF33 | Pleasure |

Endorsement Reason:

INSURED PROPERTY IS PRINCIPALLY GARAGED AT ABOVE ADDRESS OR:

COVERAGE IS PROVIDED ONLY WHERE A PREMIUM AND LIMIT OR DEDUCTIBLE ARE SHOWN:

| COVERAGE | LIMIT | UNIT 1 PREM/DED | UNIT 2 PREM/DED | UNIT 3 PREM/DED | UNIT 4 PREM/DED |
|----------|-------|-----------------|-----------------|-----------------|-----------------|
| Bodily Injury | $25,000 / $50,000 | $225 | | | |
| Property Damage | $25,000 | $288 | | | |
| UMBI | $25,000 / $50,000 | $73 | | | |
| UMPD | $25,000 | $53 | | | |
| UNBI | $25,000 / $50,000 | INCL | | | |
| Comprehensive | | $249  $500 | | | |
| Collision | | $601  $500 | | | |
| Rental Reimbursement | V1 - $20 per day for Max 21 days | $20 | | | |
| UNIT PREMIUM | | $1,509 | | | |

   TOTAL PREMIUM: $ 1,509        FEES: $ 30        POLICY TOTAL:  $ 1,539

OTHER POLICY INFORMATION
           DISCOUNTS INCLUDED: Renewal Discount, DRV 1: Good Driving Discount

**LIENHOLDERS AND ADDITIONAL INTERESTS**

| UNIT | NAME | ADDRESS | CITY | STATE | ZIP |
|------|------|---------|------|-------|-----|
| 1 | JOHN GIBSON AUTO | 1425 AIRPORT RD | HOT SPRINGS NATIONAL PARK | AR | 71913 |

USARJP05010219

## ARKANSAS INSURANCE CARD

**United Security Health and Casualty Insurance Company**
**NAIC 51108**
3310 West End Ave Suite 570
NASHVILLE, TN 37203

**AGENCY: JUPITER AUTO INSURANCE**
3310 WEST END AVENUE
SUITE 570, NASHVILLE, TN 37203
PHONE: (855) 444-4341

**POLICY NUMBER**
18-04-0011823-00

**EFFECTIVE DATE**
07/07/20

**EXPIRATION DATE**
01/07/21

**YEAR  MAKE/MODEL**
2008   Cadillac / Escalade

**VEHICLE ID NUMBER**
1GYEC63868R202604

**INSURED**
TEKILLIA HAMMOND
326 N SIXTH
WEST HELENA AR 72390

---

THIS CARD MUST BE KEPT IN THE INSURED
VEHICLE AND PRESENTED UPON DEMAND

### IN CASE OF ACCIDENT:

1. File a report with the police.
2. Express no opinion relative to responsibility and/or liability for the accident.
3. Exchange insurance information with other driver(s) involved.
4. It is imperative to obtain the names, addresses and telephone numbers of any and all witnesses.
5. Protect the vehicle from the possibility of incurring further damage if unable to drive from the scene.
6. Report accidents involving property damage and/or personal injury to our representative 1-888-264-6677.
7. Submit a completed written accident/loss report within 72 hours of the accident.



# UNITED SECURITY
## HEALTH AND CASUALTY INSURANCE COMPANY
### SIMUL, NOS VIAM INVENIENT

# Jupiter
# Auto Program

# ARKANSAS
# Personal Auto Policy

**NOTICE:** This policy has been issued in reliance on the statements in the application which is attached hereto and I part hereof. **Read It Carefully** and notify the Company immediately (through your producer) of any misinformation or changes that may occur.

**FRAUD, MISREPRESENTATION, CONCEALMENT NOTICE:**
Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information or conceals material information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

USARRW01050620

# Table of Contents

PART A - LIABILITY COVERAGE ................................................................................................................... 5

PART B - MEDICAL PAYMENTS COVERAGE ........................................................................................... 7

PART C – UNINSURED / UNDERINSURED MOTORIST COVERAGE .............................................. 9

PART D - DAMAGE TO YOUR AUTO .................................................................................................... 11

PART E – RENTAL REIMBURSEMENT COVERAGE .............................................................................. 15

PART F – TOWING AND LABOR COVERAGE ..................................................................................... 15

PART G - DUTIES AFTER AN ACCIDENT OR LOSS .......................................................................... 15

PART H - GENERAL PROVISIONS ........................................................................................................... 16

## AGREEMENT

**Your** policy consists of the policy contract, **your insurance** application, the **Declarations**, and all endorsements to this policy. **You** should read this policy very carefully and call **us** with any questions that **you** have about the terms contained in this policy.

**We** issued **you** this policy in return for the payment of **your** premium, and in reliance upon the statements of fact **you** made in **your** application for this insurance which statements of fact **you** represent are true. This policy contains terms that allow **us** to void the policy and/or sue **you** to recover any money that **we** have to pay out based upon any misrepresentations or omissions that **you** may have made when applying for coverage with **us**.

**We** agree with **you**, if **you** pay **your** premium payments when they are due, for the coverages shown in the **Declarations** and subject to all the terms and conditions of the policy, as follows:

## GENERAL DEFINITIONS

Certain words and phrases are defined by using boldface type. The defined terms have the same meaning whether in the singular, plural, or any other form. They are defined as follows:

1.  **Accident** means a sudden, unexpected and unintended event that arises out of the ownership, maintenance or use of an **auto** as an **auto**, and that causes **bodily injury** or **property damage** during the policy period.
2.  **Actual Cash Value** – means the fair market value of any tangible property immediately before its loss taking into consideration items such as (but not limited to) the age, mileage, options, pre-loss condition, cosmetic detriments, tire tread depth, un-repaired damage or maintenance items, along with the value of similar property in the marketplace.
3.  **Additional auto** means an **auto you** acquire that is in addition to any **auto** shown in the **Declarations**, if:
    a.  the **auto** is acquired during the policy period shown in the **Declarations**; and
    b.  no other insurance policy provides coverage for the **auto**; and
    c.  **you** ask **us** to insure the **auto** within 30 days after **you** become the **owner** of the **auto**; and
    d.  **we** insure all **autos** owned by **you**; and
    e.  **You** pay any additional premium due.
    An **additional auto** will have the broadest coverage **we** provide for any **auto** shown in the **Declarations**.
4.  **Auto** means a four wheeled private passenger, station wagon, sports utility or jeep type vehicle; or a truck, pick-up truck, window van or panel van with a load capacity of fifteen hundred pounds or less not used for **business** or commercial purposes, principally designed and licensed for use on paved public streets and highways. **Auto** does not include:
    a.  Any vehicle used as a dwelling or other premises; or
    b.  Any vehicle having more than four (4) wheels or a load capacity of more than fifteen hundred pounds or;
    c.  Any vehicle having less than four (4) wheels or operating on tracks; or
    d.  All-terrain vehicles, dune buggies, go-carts, forklifts, front-loaders, golf carts, riding garden tractors, farm tractors, or any other farming equipment.
5.  **Automobile Related Business** – means a business or job where the purpose is to rent, sell, lease, park, repair, service, store, or transport vehicles or trailers of any type
6.  **Bodily injury** means bodily harm, to a human being's body and death including the sickness, disease or death that results from such injury resulting from a covered loss.
7.  **Business** means any full or part-time profession, occupation, trade, business or commercial enterprise, including but not limited to:
    a.  Calling on accounts, customers or prospective customers in connection with any occupation or business; or
    b.  Hauling or carrying people, equipment, goods, or supplies used in connection with any occupation or business; or
    c.  Picking up or delivering any goods, materials, products or packages in connection with any occupation or business; or
    d.  Driving to more than one location per day in connection with any occupation or business.
    e.  Using the **auto** in conjunction with any transportation network company as a livery or taxi.
8.  **Compulsory Insurance Law** – means a law requiring a minimal level of financial responsibility or insurance coverage in order to own, operate, or allow others to operate an **auto** in the jurisdiction in which coverage under this policy is sought. This definition includes motor vehicle financial responsibility laws, compulsory insurance laws and all other laws with similar purposes.
9.  **Declarations** means the Personal Auto Policy Declarations that lists the **named insured**, the **autos** to be covered by this policy, the specific coverages that apply to specific **autos** under this policy, the limits of liability, the policy period, and other information pertinent to **your** policy of insurance **you** purchased from **us**.
10. **Delivery Related Business** means the ownership, maintenance or operation of any **auto** while it is being used to carry **persons**, property, or product for compensation or a fee, including but not limited to:
    a.  The pickup or delivery or return from a pick-up of delivery of **persons**, products, documents, newspapers, or food;
    b.  The pickup or delivery or return from a pick-up of delivery of **persons**, whether or not passengers are present in the **auto**, in conjunction with any Taxi service or company;
    c.  The pickup or delivery or return from a pick-up of delivery of **persons**, whether or not passengers are present in the **auto**, in conjunction with any transportation network application or companies, or, as they sometimes refer to themselves, rideshare applications or companies. Examples of transportation network applications or companies, or, as they sometimes refer to themselves, rideshare applications or companies, include but are not limited to Uber, Lyft and SideCar.
    This definition does not include shared-expense car pools.
11. **Equipment** means accessories and items available from the manufacturer of **your** particular make, model and model year of **your covered auto** and installed by the manufacturer.
12. **Family member** means a person who lives in the same household as the first person listed as a **named insured** in the **Declarations** and is (i) related by blood, marriage or adoption to the first **person** shown in the **Declarations as named insured**, or (ii) is related by blood, marriage or adoption to the **resident** spouse of the first **person** shown in the **Declarations** as named insured. **Family member** includes a ward or foster child of the first **person** shown in the **Declarations** as **named insured**.
13. **Named insured** means only the **person** or persons listed in the **Declarations** as the named insured. – but does not include any other person (including but not limited to persons listed in the **Declarations** or in the application for coverage) that may be described as a

driver, operator, **resident**, or spouse.

14. **Non-owned auto** means any private passenger auto, pickup, van or **trailer** not owned by, or furnished, or available for the regular use of **you**, or any **family member, relative**, or **resident** while in the custody of, or being operated by, **you**, any **family member, relative**, or **resident**.

   **Non-owned auto** includes a rental vehicle only if the following conditions are met:

   a. The rental vehicle is not **owned** by or furnished or available for the regular use of **you**, any **family member, relative**, or **resident**;

   b. The rental vehicle is operated within the United States, its territories or possessions, and Canada;

   c. The rental vehicle is operated only for pleasure and not for **business** use;

   d. The rental vehicle is a private passenger **auto**, meets all qualifications of an **auto** and is not a motor home, camper, travel trailer, U-Haul, or customized van;

   e. The rental vehicle is **owned** by a licensed agency engaged in the **business** of renting or leasing vehicles; and

   f. The rental vehicle is rented by the insured under a rental agreement with a term no longer than ninety consecutive days.

15. **Occupying** means in, getting in, or exiting but only as long as there is physical contact with the **auto**.

16. **Own/Owned** means, with respect to a private passenger type **auto**, the **person**:

   a. holds legal title; or

   b. has legal possession of an **auto** that is subject to the fulfillment of a sales agreement evidenced by some form of writing; or

   c. has legal possession under a written lease or loan agreement for a continuous period of at least six months.

17. **Person** – means a human being.

18. **Property damage** means physical injury or destruction of tangible property, including the resulting loss of use of that property.

19. **Relative** –means a **person** who is a resident of **your** household and is related by blood, marriage, or adoption to any named **insured**. **Relative** includes a ward or foster child of any named **insured**.

20. **Replacement auto** means an **auto** that permanently replaces an **auto** shown in the **Declarations**. A **replacement auto** will have the same coverages as the **auto** it replaces provided that no other insurance provides coverage for the **replacement auto** and it is acquired during the policy period shown in the **Declarations**. If **you** wish to continue coverage under **Part D – Damage to Your Auto** for the **replacement auto**, **you** must ask **us** to provide the coverage within 30 days after **you** become the owner of the **replacement auto**. If the **auto** it replaces does not have coverage under **Part D – Damage to Your Auto**, **you** must ask **us** to add the coverage and **you** must pay the additional premium due prior to the effective date those coverages are added.

   The thirty (30) day notice period shall not have the effect of extending the policy term beyond its expiration or cancellation date. <u>**You** will have no coverage of any type during the thirty (30) day period after **you** acquire a **replacement auto** if **you** do not satisfy all the conditions listed above.</u>

   Continuation of coverage beyond the 30-day period is subject to **our** agreement to do so. **Our** decision will be based in part on **our** underwriting rules in effect at the time **you** request that **we** continue coverage.

21. **Resident** means a **person** who lives with **you**, whether or not that **person** is a member of **your** household and includes (but is not limited to) **you**, and any **person** who is a **family member** or **relative**.

22. **Temporary substitute auto** means any **non-owned auto** while temporarily used as a substitute for **your covered auto** when withdrawn from normal use because of breakdown, repair, servicing, loss or destruction. Provided:

   a. The vehicle is not **owned** by or furnished or available for the regular use by **you**, any **family member, relative**, or **resident**; and

   b. The vehicle is operated within the United States, its territories or possessions, and Canada; and

   c. The vehicle is not operated for business use; and

   d. The vehicle is an **auto** and not a motor home, camper, travel trailer, U-Haul, or customized van.

   **Temporary substitute auto** does not include any **auto** provided to **you**, a **family member, relative** or **resident** for demonstration purposes.

23. **Trailer** means a non-motorized vehicle designed to be pulled by a:

   a. private passenger **auto**; or

   b. pickup, van or panel truck.

   It also means a farm wagon or farm implement while being towed by a vehicle listed in a. or b. above. It does not include travel trailers, camper trailers or other **trailers** used for **business** purposes including a **trailer** used as a home, office, a store or display, or to transport passengers.

24. **War** means war, whether or not declared, civil war, insurrection, rebellion or revolution, or any act or condition incident to any of the foregoing.

25. **We, us** and **our** refer to the insurance company providing this insurance, as shown in the **Declarations**.

26. **You** and **your** refer to:

   a. the **named insured** shown in the **Declarations**; and

   b. the spouse of the **named insured** shown in the **Declarations**, if a **resident** of the same household.

27. **Your covered auto** means:

   a. any **auto** you own shown in the **Declarations** for the coverages applicable to that **auto**; or

   b. any **additional auto**; or

   c. any **replacement auto**.

## PART A - LIABILITY COVERAGE

### THIS COVERAGE APPLIES ONLY:

If there is a premium shown for it on the **Declarations**, to the specific **covered auto(s)** for which a premium is shown on the **Declarations**, if **you** pay **us** the premium when due for this coverage, and then only to the limits of liability shown in the **Declarations**.

### INSURING AGREEMENT

**We** will pay damages for **bodily injury** and **property damage** for which an **insured person** becomes legally responsible because of an **accident**.

**We** will investigate, settle or defend, at **our** expense and as **we** consider appropriate, any claim or suit asking for these damages. Attorneys selected by **us** will provide a defense to such suit after it is tendered to **us**.

**IMPORTANT NOTICE: Our** duty to settle or defend ends when **our** limit of liability for this coverage has been exhausted by any means, including (but not limited to) settlement, payment or deposited with a court having jurisdiction.

**We** have no duty to defend any suit or settle any claim for **bodily injury** or **property damage** not covered under this policy. **We** may recover from an **insured person** any amounts **we** have paid to defend the **insured person** in a lawsuit if it is determined that **we** had no duty to defend the **insured person**.

### SUPPLEMENTARY PAYMENTS

In addition to **our** limit of liability, **we** will pay on behalf of an **insured person**, reasonable expenses incurred at **our** request.

### ADDITIONAL DEFINITIONS

When used in this Part A:
**Insured person** means:
1. with respect to **your covered auto**:
   a. **you**;
   b. a **family member**;
   c. any other **person** using **your covered auto** to whom the **named insured** has given expressed permission, provided the use is within the scope of such permission. Any coverage that **we** provide to a **person** using **your covered auto** with **your** consent shall be excess to any other insurance coverage available to the **person** using **your covered auto** with **your** consent. Any **person** using **your covered auto** without **your** consent or outside the scope of that consent shall only be afforded coverage under this policy if mandated by a **Compulsory Insurance Law** of the state in which any **accident** occurs and then only to the extent mandated by law with such coverage being excess to any other insurance coverage available to the **person** using **your covered auto**.
2. with respect to a **non-owned auto**:
   a. **you** provided **you** have received the expressed consent of its owner and such use is within the scope of that consent;
   b. a **family member** who does not own an **auto** provided they have received the expressed consent of its owner and such use is within the scope of that consent;

### EXCLUSIONS THAT APPLY TO PART A-LIABILITY COVERAGE

### READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART A.

If an applicable **Compulsory Insurance Law** renders any exclusion under this policy to be unenforceable, **we** will provide only those types of coverage required by such law and only in the minimum amounts required. However, if any other insurance policy covers **our insured's** liability and provides the minimum limits required by the **Compulsory Insurance Law** the exclusion provisions of this policy shall be deemed to be fully enforceable. If a **Compulsory Insurance Law** requires **us** to make payment to third parties that would otherwise be excluded below, **we** expressly reserve the right to seek recovery for such payment from any **person** or **persons** responsible for the **accident** involved with the payment.

**We** do not provide Liability Coverage and **we** have no duty to settle or defend any claim or lawsuit:
1. For **bodily injury** or **property damage** caused intentionally by, or at the direction of, and substantially certain to follow from the act of an **insured person**, even if the actual injury or damage is different than that which was intended or expected.
2. For damage to property owned by, used by, rented to, being transported by, or in the care, custody or control of an **insured person**. This exclusion does not apply to damage to a rented residence or rented private garage.
3. For **bodily injury** or **property damage** arising out of the ownership, maintenance or operation of any vehicle while it is being used in a **delivery related business**.
4. For **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any vehicle by a **person** in an **automobile related business**.
5. For **bodily injury** or **property damage** arising out of any **person's** use of a vehicle without the owner's expressed permission or outside the scope of that consent.
6. For **bodily injury** or **property damage** for which an **insured person**:
   a. is an insured under a nuclear energy liability policy; or
   b. would be an **insured** under a nuclear energy liability policy but for its:
      i. Expiration;
      ii. Termination for any reason; or
      iii. Termination upon exhaustion of its limit of liability.

   A nuclear energy liability policy is a policy issued by, but not limited to, any of the following or their successors:

USARRW01050620

Page 5 of 19

a. American Nuclear Insurers; or
b. Nuclear Energy Liability Insurance Association; or
c. Mutual Atomic Energy Liability Underwriters; or
d. Nuclear Insurance Association of Canada.

7. For punitive, exemplary, multiple damages, damages for aggravating circumstances, fines, penalties, restitution, or any other type of damages that may be imposed to punish wrongdoers and deter others from similar conduct.
8. For liability assumed by an **insured person** under any contract or agreement.
9. Arising out of the ownership, maintenance or use of any **auto**, other than your **covered auto** which is:
   a. **Owned** by you; or
   b. Furnished or available for **your** regular **use**; or
   c. **Owned** by any **family member**, **relative** or any **resident**; or
   d. Furnished or available for the regular use of any **family member**, **relative** or any **resident**; or
   e. **Owned** by, registered to, leased or rented to an employer of **you** or any **family member**, **relative** or **resident**; or
   f. Rented while it is used in connection with an **insured** driver's employment or **business**; or
   g. Has been operated or rented by or in the possession of **you**, a **family member**, **relative** or **resident** during any part of each of the last twenty-one (21) or more consecutive days.
10. For **bodily injury** or **property damage** arising out of the ownership or operation of any vehicle while it is being used in any racing, speed, or demolition event or contest or stunting activity or in preparation for such an event, contest, or activity. This exclusion applies regardless of whether the event, contest, or activity is pre-arranged or not.
11. For any obligation for which the United States Government is liable under the Federal Tort Claims Act.
12. Arising out of the ownership, maintenance or use of **your covered auto** while it is rented to or leased to another.
13. Arising out to the ownership, maintenance or use of any vehicle while it is being used in connection with any type of personal vehicle sharing program.
14. Arising out of the ownership, maintenance or use of any vehicle that is principally designed for use off public roads.
15. For charges, fees and administrative expenses for services performed by law enforcement and municipal personnel when responding to a motor vehicle **accident** or loss.
16. For **bodily injury** to, or damage to property owned by, the **named insured**, any **family member** of the named insured, any **relative** or **resident** where the **person** against whom suit is brought is also a **resident** of that same household except to the extent mandated by the financial responsibility laws of the state in which this policy is issued.
17. Arising out of the use of any **auto**, or any other type of motor vehicle, rented or leased by the **insured** where other valid and collectible insurance has been purchased by or furnished to the **insured** in connection with such rental or lease.
18. For **bodily injury** or **property damage** due to **war**.
19. For **bodily injury** or **property damage** arising out of the operation of farm machinery.
20. For **bodily injury** or **property damage** resulting from pushing or pulling of a vehicle (other than a **trailer**) by an insured **auto**, or the pushing or pulling of an insured **auto** by another vehicle (other than a licensed tow truck).
21. For damages other than compensatory damages for death, **bodily injury** and **property damage** to make an injured party whole within the limitations of this policy, including any additional damages, costs, expenses, pecuniary losses, attorney's fees, penalties, fines, treble damages, or punitive damages which may be recoverable or awarded at law or in equity as a result of the **named insured's** criminal conviction.
22. For damages other than compensatory damages for death, **bodily injury**, and **property damage** to make an injured party whole within the limitations of this policy, any additional damages, costs, expenses, attorney's fees, fines, penalties, treble damages, punitive damages, or smart money which may be recoverable or awarded at law or in equity as a consequence of reckless driving, operating a motor vehicle with a blood or breath alcohol content deemed to be legally intoxicating, or under the influence of an illegal substance, causing or contributing to operating a motor vehicle while intoxicated, or similarly influenced, or reckless endangerment.
23. For **bodily injury** or **property damage** arising out of the use of a rental or leased **auto** by an operator not authorized under the terms of the rental or lease agreement.
24. For **bodily injury** to any employee or fellow employee of an **insured person** during the course of or arising out of his or her employment or any other **business** activity. This exclusion (25.) does not apply to **bodily injury** to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.
25. For any loss arising directly or indirectly out of instances, occurrences or allegation of criminal activity by **you** or a **relative** or any **insured person**.
26. For any **bodily injury** or **property damage** caused after an **insured person** fails to stop the **auto** he/she is driving after being directed to stop by a law enforcement officer. This includes any situation in which an **insured person** is fleeing from a law enforcement officer.
27. For the **business** related use of an **auto**, unless we have so agreed and charged an additional premium.

## LIMIT OF LIABILITY

The **bodily injury** liability limit for "each person" as shown in the **Declarations** is the maximum **we** will pay for **bodily injury** sustained by any one **person** in any one **accident**, including all derivative claims which include, but are not limited to, loss of consortium, loss of services, loss of companionship, or injury to any personal relationship. **Bodily injury** to any one **person** includes all injury and damages to others resulting from this **bodily injury**.

Subject to the **bodily injury** liability limit for "each person", the **bodily injury** liability limit for "each accident" as stated in the **Declarations** is the maximum **we** will pay for **bodily injury** sustained by two or more **persons** in any one **accident**.

The **property damage** liability limit for each **accident** as stated in the **Declarations** is the maximum **we** will pay for all **property damage** arising out of any one **accident**.

The limit of liability shown in the **Declarations** is the most we will pay regardless of the number of vehicles involved in the **accident**, **insured persons**, claims made, lawsuits brought, premiums paid, or the number of covered **auto(s)** or premiums shown in the **Declarations**.

No one is entitled to duplicate payments for the same element of damages. Any amount payable under Part A-Liability Coverage to a **person** for **bodily injury** shall be reduced by all sums paid to that **person**, or for their benefit, under any other coverage that may be provided under this policy including, but not limited to, Medical Payments Coverage, Uninsured/Underinsured Motorist Coverage, or Personal Injury Protection Benefits.

## OUT OF STATE COVERAGE

If an **insured driver** under this coverage is in another state and, as a non-resident, becomes subject to that state's motor **compulsory insurance law**:

1. The policy will be interpreted to give the coverage required by the law for a non-resident; and
2. The coverage so given replaces any coverage in this policy to the extent required by the law for an **insured driver's** maintenance or use of an **insured auto**; and,
3. Any coverage so extended shall be reduced to the extent other coverage applies to the **accident**. In no event shall a **person** collect more than once for the same elements of loss.

## FINANCIAL RESPONSIBILITY

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required. If, due to certification as future proof of financial responsibility, **we are required** to pay a claim that would otherwise have not been covered under this Part, **you agree** to reimburse **us** to the extent of that payment.

## OTHER INSURANCE

If there is other liability coverage available under one or more policies or provisions of coverage:

1. Any insurance **we** provide with respect to any **insured person** other than **you**, or a **family member** who does not own an auto shall be excess over any collectible insurance otherwise available to the **insured person**;
2. Any insurance **we** provide with respect to an **auto you** do not own shall be excess over any collectible insurance providing coverage to such auto.

If the coverage under this policy is provided:

1. On a primary basis, we will pay only **our** share of the loss that must be paid under insurance providing coverage on a primary basis. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis;
2. On an excess basis, we will pay only **our** share of the loss that must be paid under insurance providing coverage on an excess basis. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis;

Nothing in this section shall be read to allow the stacking of any coverage included anywhere within this policy.

## RIGHT OF DIRECT ACTION

If execution of a judgment against an **insured person** is returned unsatisfied, any person entitled to payment of damages covered by this Part I may, within the time limit specified by Arkansas Code Section 16-56-103 et al., as amended, maintain an action against **us** for the amount of the judgment that does not exceed our limits of liability under this Part I.

## PART B - MEDICAL PAYMENTS COVERAGE

### THIS COVERAGE APPLIES ONLY:

Any coverages under Part B will be by endorsement to this policy if there is a premium shown for it on the **Declarations**, to the specific vehicle(s) for which a premium is shown on the **Declarations**, if you pay us the premium when due for this coverage, and then only to the limits of liability shown in the **Declarations**.

### INSURING AGREEMENT

**We** will pay the reasonable expenses incurred for necessary medical, and funeral services because of **bodily injury** caused by an **accident** and sustained by an **insured person**. **We** will pay only those reasonable expenses incurred:

1. For:
   a. Services performed; or,
   b. Medical supplies, medication or drugs prescribed by a medical provider licensed by the state to provide the specific medical services; or,
   c. For funeral services.

Reasonable medical expenses do not include expenses:

1. For treatment, services, products or procedures that are:
   a. Experimental in nature, for research, or not primarily designed to serve a medical purpose; or
   b. Not commonly and customarily recognized throughout the medical profession and within the United States of America as appropriate for the treatment of the **bodily injury**; or

2. Incurred for:
   a. The use of acupuncture or other related procedures of a similar nature; or
   b. The purchase or rental of equipment not primarily designed to serve a medical purpose.

We have the right to make or obtain a utilization review of the medical expenses and services to determine if they are reasonable and necessary for the **bodily injury** sustained.

We will pay only those expenses incurred within one (1) year from the date of the **accident**. The **bodily injury** must be discovered and treated within one (1) year of the date of the **accident** that do not to exceed the statute of limitations for said coverage.

## ADDITIONAL DEFINITIONS

When used in this Part B **insured person** means:
1. You and any **family member** who does not own an **auto:**
   a. while **occupying** any **auto;** or
   b. when struck as a pedestrian by an **auto.**
2. Any other **person** while **occupying your covered auto.**

## EXCLUSIONS THAT APPLY TO PART B – MEDICAL PAYMENTS COVERAGE

**We** do not provide Medical Payments Coverage for any **insured person** for **bodily injury:**
1. Sustained while **occupying** any motorized vehicle having fewer than four (4) wheels.
2. Sustained while **occupying** a vehicle when it is being used for any **business** related use.
3. For **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any vehicle by a **person** in a **delivery related business.**
4. Sustained while **occupying** any vehicle while being used as a residence or premises.
5. Arising out to the ownership, maintenance or use of any vehicle while it is being used in connection with any type of personal vehicle sharing program.
6. For **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any vehicle by a **person** in an **automobile related business.**
7. Occurring during the course and scope of employment if workers' compensation or disability benefits are required or available for the **bodily injury.**
8. Sustained while **occupying** or when struck by any vehicle other than **your covered auto** which is:
   a. owned by **you;** or
   b. furnished or available for **your** regular use; or
   c. owned by any **family member, relative,** or **resident;** or
   d. furnished or available for the regular use of any **family member, relative,** or **resident.**
   This exclusion does not apply to **your** maintenance or use of such vehicle.
9. Sustained while **occupying** a vehicle without the owner's expressed permission.
10. Caused by or as a consequence of:
    a. discharge of a nuclear weapon (even if accidental); or
    b. **war.**
11. From, or as a consequence of the following, whether controlled or uncontrolled or however caused:
    a. nuclear reaction; or
    b. radiation; or
    c. radioactive contamination.
12. While **occupying** any vehicle that is being used in any racing, speed, or demolition event or contest or stunting activity or preparation for such an event, contest, or activity. This exclusion applies regardless of whether the event, contest, or activity is pre-arranged or not.
13. Caused intentionally by, or at the direction of, any **insured person,** even if the actual injury or damage is different than that which was intended or expected.
14. For which the United States Government is liable under the Federal Tort Claims Act.
15. Arising out of the ownership, maintenance or use of **your covered auto** while it is rented to or leased to another.
16. Arising out of the ownership, maintenance or use of any vehicle that is principally designed for use off public roads.
17. Sustained through being struck by any motor vehicle or **trailer** designed mainly for use off public roads while off public roads;
18. For which an **insured person:**
    a. Is an insured under a nuclear energy liability policy; or
    b. Would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.
    A nuclear energy liability policy is a policy issued by any of the following or their successors:
    a. American Nuclear Insurers;
    b. Mutual Atomic Energy Liability Underwriters; or
    c. Nuclear Insurance Association of Canada.
19. While a **covered auto** is in the control of an excluded operator.

## LIMIT OF LIABILITY

1. The limit of liability shown in the **Declarations** for this coverage is the most **we** will pay for each **insured person** injured in any one **accident.** This is the most **we** will pay regardless of the number of:
   a. **insured persons;**
   b. Claims made;
   c. Lawsuits brought;
   d. Vehicles or premiums shown in the **Declarations;**
   e. Premiums paid; or
   f. Vehicles involved in the **accident.**

2. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and any other coverage that may be provided under this policy, including, but not limited to, Liability Coverage, Uninsured Motorists Coverage, Underinsured Motorists Coverage, or Personal Injury Protection Benefits.

3. No payment shall be made unless the injured **person** or that **person's** legal representative agrees that any payment shall be applied toward any settlement or judgment that **person** receives under any other coverage that may be provided under this policy, including, but not limited to, Liability Coverage, Uninsured Motorists Coverage, Underinsured Motorists Coverage, Personal Injury Protection Benefits.

## OTHER INSURANCE

Any insurance we provide shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses. If there is other applicable auto medical payments insurance we will pay only our share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. Any insurance we provide with respect to a **covered auto you** do not **own** shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

**Nothing in this section shall be read to allow stacking of any coverage available under this policy.**

## PART C – UNINSURED MOTORIST COVERAGE AND UNDERINSURED MOTORIST COVERAGE

### THESE COVERAGES APPLY ONLY:

If there is a premium shown for Uninsured Motorist Coverage and/or Underinsured Motorist Coverage on the **Declarations**; and to the specific **covered auto(s)** for which a premium is shown on the **Declarations**; and if you pay us the premium when due for this coverage.

### INSURING AGREEMENT – UNINSURED MOTORIST COVERAGE AND UNDERINSURED MOTORIST COVERAGE

**We** will pay for compensatory damages for **property damage** to an **insured auto** or **bodily injury** which an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle**, caused by an **accident**, and arising out of the ownership, maintenance or use of an **uninsured motor vehicle** or **underinsured motor vehicle**.

Any judgment or settlement for damages arising out of a suit brought without **our** written consent is not binding on **us**.

Recovery under this part for **"property damage"** is subject to the payment of a specific separate premium for **uninsured motorist property damage**.

### ADDITIONAL DEFINITIONS

1. When used in Uninsured Motorist Coverage and Underinsured Motorist Coverage, **insured person** means:
    a. **You,**
    b. Any **family member** who does not own an **auto;** or
    c. Any **family member** who owns an **auto**, but only while occupying **your covered auto**; or
    d. Any other **person** while occupying **your covered auto**, provided the actual use thereof is with **your** express permission; and
    e. Any **person** for damages that **person** is entitled to recover because of **bodily injury to you**, a **family member** or another **person** while occupying **your** covered auto.

    No **person** shall be considered an **insured person** if that **person** uses a motor vehicle without permission of the owner.

2. **Uninsured motor vehicle** means an **auto**:
    a. To which no liability bond or policy applies at the time of the **accident**, by or through any **person** or organization, including, but not limited to, any **owner**, operator, or occupant.
    b. To which a liability bond or policy does apply at the time of the **accident**, but the amount of such bond or policy is less than the minimum limit for liability specified by the financial responsibility laws.
    c. Which is a hit-and-run **auto** whose operator or **owner** is unknown or cannot be identified and causes an **accident** resulting in **bodily injury** provided:
        1) That the **insured person**, or someone on his or her behalf, reports the **accident** to the police or civil authority within twenty-four (48) hours after the **accident**.
        2) **We** may require supporting evidence other than the testimony of a **person** making a claim under this or any similar coverage to support the validity of such claim.
        3) There must be actual physical contact with the hit-and-run **auto**.
    d. To which a liability bond or policy applies at the time of the **accident**, but the bonding or insuring company is or becomes insolvent within one year after an **accident**.

    However, **uninsured motor vehicle** does not include any vehicle or equipment:
    a. **Owned** by or furnished or available for the regular use of you or any **family member**, any **relative** or any **resident**.
    b. **Owned** or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer that is or becomes insolvent.
    c. Is **owned** or operated by any governmental unit or agency.
    d. Operated on rails or crawler treads.
    e. Designed mainly for use off public roads while not on public roads.
    f. While located for use as a residence or premises.
    g. That is an **underinsured motor vehicle;** or
    h. For which coverage under Part A applies.

3. **Underinsured motor vehicle** means an **auto** with respect to the ownership, maintenance or use of which the sum of the limits of liability under all **bodily injury** liability bonds or policies applicable at the time of the **accident** are equal to or greater than the financial responsibility

requirements of Arkansas but are less than the limits of liability shown in the **Declarations** for Underinsured Motorist Coverage. However, **underinsured motor vehicle** does not include any vehicle or equipment:

    a. Insured by a liability bond or policy at the time of the **accident** with **bodily injury** limits less than the minimum limits for **bodily injury** liability required by the financial responsibility law of Arkansas.

    b. Insured by a liability bond or policy at the time of the accident with **property damage** limits less than the minimum limits for **property damage** liability required by the financial responsibility law of Arkansas

    c. **Owned** by or furnished or available for the regular use of **you** or any **family member, any relative** or any **resident.**

    d. **Owned** or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer that is or becomes insolvent.

    e. **Owned** or operated by any governmental unit or agency.

    f. Operated on rails or crawler treads.

    g. Designed mainly for use off public roads while not on public roads.

    h. While located for use as a residence or premises.

    i. That is an **uninsured motor vehicle;** or

    j. For which coverage under Part A applies.

## EXCLUSIONS THAT APPLY TO PART C – UNINSURED MOTORIST COVERAGE AND UNDERINSURED MOTORIST COVERAGE

Coverage under this part does not apply:

1. If the **insured person** or their legal representative settles or prosecutes to a judgment a claim for **bodily injury** or **property damage** without **our** consent.

2. To **bodily injury** or **property damage** sustained by any **person** or **insured** while **occupying** or when struck by any motor vehicle owned by **you,** any **family member, relative** or **resident** which is not insured for this coverage under this policy

3. to **bodily injury** or **property damage** arising out of the ownership, maintenance or operation of any vehicle while it is being used in a **delivery related business.**

4. While **occupying** a motor vehicle with less than four wheels.

5. Arising out of the ownership, maintenance or use of any vehicle including **your covered auto,** when used for any **business** purpose. However, this exclusion does not apply to **business** use that has been disclosed to and accepted by **us.**

6. While any vehicle is being used in or to prepare for any racing, speed, stunt, performance or demolition activity. This exclusion applies whether or not such activity is prearranged or organized.

7. While **your covered auto** is being operated by a **family member, relative or resident** who was not reported to **us.** The **family member, relative** or **resident** must be reported on the original application for insurance or otherwise disclosed to **us** and listed on **the Declarations** before the auto accident.

8. To **bodily injury** or **property damage** when an **insured person** is using a vehicle without the expressed permission of the owner, or outside of that permission.

9. To **property damage** when the applicable liability limit of the at fault vehicle is unknown or cannot be established. This exclusion applies when **you** cannot provide the name, address, or any supporting information of the at fault motor vehicle, operator, or owner.

10. Caused by, or as an effect of, **war.** This exclusion also applies to damages caused by nuclear reaction, radiation or radioactive contamination.

11. While using or **occupying** any **auto** in connection with any type of personal vehicle sharing program.

12. Arising out of the use of a vehicle while the vehicle is being used in the commission of a non-vehicular felony or while attempting to **elude** arrest by a law enforcement official.

13. Directly or indirectly to benefit any **insured person** or self- insurer under any of the following or similar law:

    a. workers' compensation law;

    b. disability benefits law;

    c. the State Accident Insurance Fund; or

    d. an insurer of property.

14. Directly to the benefit of the United States or any State or political subdivision thereof.

15. For punitive, exemplary, multiple damages, damages for aggravating circumstances, fines, penalties, restitution, or any other type of damages that may be imposed to punish wrongdoers, and deter others from similar conduct;

16. While a **covered auto** is in the control of an excluded operator.

17. Caused intentionally by, or at the direction of, any **insured person,** even if the actual injury or damage is different than that which was intended or expected.

## LIMITS OF LIABILITY – UNINSURED MOTORIST COVERAGE AND UNDERINSURED MOTORIST COVERAGE

Subject to these provisions, the limits shown on the **Declarations** for this coverage are the most **we** will pay in damages for any one **auto accident.**

1. The **Uninsured Motorist Bodily Injury** or **Underinsured Motorist Bodily Injury** limits for each **person** as shown in the **Declarations** is the maximum **we** will pay for **bodily injury** sustained by any one **person** in any one **accident,** including all derivative claims which include, but are not limited to, loss of consortium, loss of services, loss of companionship, or injury to any personal relationship. **Bodily injury** to any one **person** includes all injury and damages to others resulting from this **bodily injury.**

2. Subject to the **Uninsured Motorist Bodily Injury** or **Underinsured Motorist Bodily Injury** limits for each **person,** the **Bodily Injury** limit for each **accident** as stated in the **Declarations** is the maximum **we** will pay for **bodily injury** sustained by two or more **persons** in any one **accident.**

The limit of **Uninsured Motorist Bodily Injury** or **Underinsured Motorist Bodily Injury** Liability shown in the **Declarations** is the most **we** will pay regardless of the number of:

1.  **Insured persons;**
2.  Claims made or lawsuits filed;
3.  vehicles or premiums described in the **Declarations;**
4.  Vehicles involved in the **accident;**
5.  **persons** making a claim;
6.  policies issued by **us;** or
7.  Premiums paid.

No stacking of Uninsured Motorist Coverage or Underinsured Motorist Coverage will be allowed by this policy. In no event shall the limit of liability for two or more motor vehicles or two or more policies be added together, combined, or stacked to determine the limit of insurance coverage available as Uninsured Motorist Coverage, Uninsured Motorist Coverage benefits, Underinsured Motorist Coverage, or Underinsured Motorist Coverage benefits.

Any amount payable under the terms of this coverage shall be reduced by:
1.  All sums paid on account of the **bodily injury or property damage** by or on behalf of the owner or operator of the **uninsured motor vehicle** or **underinsured motor vehicle** and by or on behalf of any other person or organization jointly or severally liable together with the owner or operator for the **bodily injury or property damage,** including all sums paid under Part A or Part B of this policy; and
2.  The amount paid and the present value of all amounts payable on account of the **bodily injury** under any worker's compensation law, disability benefits law, or any similar law.

No one will be entitled to duplicate payments for the same elements of damages.

## OTHER INSURANCE

If there is other applicable coverage on a **loss** covered by this Part, **we** will pay only **our** share of the damages. **Our** share is that percentage of the damages that **our** limits for this coverage bear to the total of all applicable limits.

When an **insured person** is a pedestrian or occupying an auto not listed on the **Declarations** Page, this coverage is excess over any other applicable insurance.

This coverage shall apply only in the amount by which the limits of liability for this coverage exceed the applicable limits for such other insurance

## ARBITRATION

Any arbitration is both voluntary and non-binding. However, in an attempt to reduce litigation, the following Arbitration procedures would be utilized.

Arbitration may occur if **we** and an **insured person** claiming coverage under this Part do not agree to either of the following.
1.  The legal liability of the operator or owner of an uninsured motor vehicle or **underinsured motor vehicle.**
2.  The amount of damages.

The matter may be arbitrated upon written agreement between both parties. In this event, each party will select an arbitrator unless the parties agree in writing on the use of a single arbitrator. If two arbitrators are used, they will select a third. If the two arbitrators cannot agree on the third within thirty (30) days, then on joint request by the insured and **us,** the third arbitrator will be appointed by a judge or court having jurisdiction.

Disputes over coverage under this Part may not be arbitrated.

Each party will do all of the following.
1.  Pay the expenses they incur.
2.  Bear the expenses of the single arbitrator equally.
3.  If a third arbitrator is used, bear the expenses equally.

Unless both parties agree otherwise, arbitration will take place in the county in which the **insured person** lived, as listed on the policy, immediately prior to the **accident.**

Local rules of procedure and evidence will apply. A decision agreed to by two of the arbitrators, or the single arbitrator, shall apply to the following.
1.  The legal liability of the operator or owner of an uninsured motor vehicle or **underinsured motor vehicle**
2.  The amount of damages. The arbitrators shall have no authority to award an amount in excess of the limits of liability or which includes punitive or exemplary damages.

The decision of the arbitrators is applicable only for the amount of the award that does not exceed **our** limits of liability or include punitive or exemplary damages.

## ADDITIONAL DUTIES UNDER THIS PART ONLY

A person seeking Uninsured/Underinsured Motorist Coverage must also:
1.  Notify the police within 48 hours if a hit and run driver is involved.
2.  Provide **us,** within 30 days of the date of filing, with a copy of the complaint, if a lawsuit is brought by the **insured person** against the owner or operator of the **uninsured motor vehicle** or **underinsured motor vehicle,** or against the **owner** or operator of any other **auto** in the **accident.**
3.  Within a reasonable time, make available at **our** expense all pleadings and depositions, if an **insured person** brings a lawsuit against the owner or operator of the **uninsured motor vehicle** or **underinsured motor vehicle,** or against the **owner** or operator of any other **auto** in the **accident.**
4.  Provide **us** with proof that the limits of liability under any liability bond or policies applicable to an **uninsured motor vehicle** or **underinsured motor vehicle** have been exhausted by payment of judgments or settlements.

## PART D - DAMAGE TO YOUR AUTO

### THIS COVERAGE APPLIES ONLY:

If there is a premium shown for it on **the Declarations**, to the specific **covered auto(s)** for which a premium is shown on **the Declarations**, if **you** pay **us** the premium when due for this coverage, and then only to the limits of liability shown in the **Declarations**.

### INSURING AGREEMENT

1. **We** will pay for **loss** to **your covered auto**, including its equipment, minus any applicable deductible shown in the **Declaration** caused by **Collision** or **Other Than Collision.**
2. **Loss** as it is defined in this section means sudden, direct and accidental **loss** of or damage to **your covered auto** and its equipment. **Loss** does not mean any difference in the market value of **your covered auto** immediately before the **loss** and the market value of **your covered auto** after repairs from the **loss** are completed, or any diminution of value. **We** will pay for **loss** to an **insured auto** caused by:
    a. **Other than collision** only if the **Declarations** indicate that **Other Than Collision** Coverage is provided for that **auto**;
    b. **Collision** only if the **Declarations** indicate that **Collision Coverage** is provided for that **auto**;

If there is a **loss** to a **temporary substitute auto**, **we** will provide the broadest coverage applicable to any **your covered auto** shown in the **Declarations**

### ADDITIONAL DEFINITIONS

When used in this Part D:
1. **Collision** means the upset of **your covered auto** or its impact with another vehicle or object.
2. **Other Than Collision loss** caused by the following:
    a. Missiles or falling objects;
    b. Fire;
    c. Theft or larceny;
    d. Explosion or earthquake;
    e. Windstorm;
    f. Hail, water or flood;
    g. Malicious mischief or vandalism;
    h. Riot or civil commotion;
    i. Contact with birds or animals; or
    j. Breakage of Glass not caused by **Collision.**
3. **Your covered auto** also includes a **temporary substitute auto** in the custody of or being operated by **you** or any **family member.**
4. **Diminution in value** means the actual or perceived **loss** in market or resale value which results from a direct and accidental **loss**.
5. **Value rating** is the value as determined for **your covered auto** for **loss** covered under Part D; the **value rating** of **your covered auto** appears within the current Declarations.

### SUPPLEMENTAL PAYMENTS

#### Transportation Expenses

In addition, if **you** have purchased **Other Than Collision** coverage, in the event of a total theft of **your covered auto**, **we** will pay twenty dollars ($20) per day, to a maximum of six hundred dollars ($600) for:
Transportation expenses incurred by **you. We** will reimburse **you** only reasonable transportation expenses actually and necessarily incurred by **you.**
1. Loss of use expenses that **you** become legally liable for in the event of the total theft of a **non-owned auto.**

**We** will pay only the transportation expenses incurred during the period:
1. Beginning 48 hours after the theft is reported to **us**; and
2. Ending when **your covered auto** has been repaired or replaced, whichever occurs first. If **your covered auto** is determined by **us** to be a total loss, coverage for transportation expense will end 48 hours after **we** make an offer to pay the **actual cash value** of **your covered auto.**

**We** will not pay **you** the cost of renting an auto from an individual. The auto must be rented from a business whose day-to-day operations involve vehicle rental. **We** will not pay for insurance, collision damage waivers, fuel, global positioning system (GPS) or any other charges, except for the actual cost of the rental of the vehicle including applicable taxes.

### EXCLUSIONS THAT APPLY TO PART D – DAMAGE TO YOUR AUTO

Coverage under this Part D does not apply for **loss**:
1. To **your covered auto** or **non-owned auto** which occurs while it is being used in a **delivery related business**. This exclusion does not apply to a share-the-expense carpool.
2. To **your covered auto** or **non-owned auto** while it is being rented to others or hired for a fee.
3. To **your covered auto** or **non-owned auto** arising out to the ownership, maintenance or use of the vehicle while it is being used in connection with any type of personal vehicle sharing program.
4. To any vehicle that is due and confined to:
    a. Wear and tear;
    b. Deterioration including but not limited to rust, rot or mold;
    c. Latent or inherent defects;

    d.   Freezing;
    e.   Mechanical or electrical breakdown or failure;
    f.   Road damage to tires;
    g.   Lack of maintenance, including but not limited to lack or loss of lubricants, oil, transmission fluid, or coolant; or
    h.   Leakage or seepage of water, whether or not wind driven, unless entering the vehicle through an opening caused by a covered peril.

5.   To any vehicle due to or as a consequence of:
    a.   Radioactive contamination;
    b.   Discharge of any nuclear weapon (even if accidental);
    c.   **War.**

6.   To:
    a.   Any electronic equipment designed for the reproduction of sound, including but not limited to:
       1)   Radios and stereos;
       2)   Tape decks; or
       3)   Compact disc players or DVD players;
    b.   Any other electronic equipment that receives or transmits audio, visual or data signals, including, but not limited to:
       1)   Citizens band radios;
       2)   Telephones;
       3)   Two-way mobile radios;
       4)   Scanning monitor receivers;
       5)   Televisions;
       6)   Television monitor receivers;
       7)   Any video recording devise including video cassette recorders;
       8)   Any audio recording devise including audio cassette recorders;
       9)   Personal computers of any type or size including handheld computing devices;
    c.   Tapes, records, discs or other media used with equipment described in a. or b.; or
    d.   Any other accessories used with equipment described in a. or b.
   This exclusion (6.) does not apply to:
    a.   Equipment designed solely for the reproduction of sound and accessories used with such equipment if such equipment and accessories are permanently installed in the opening originally designed for such equipment by the manufacturer of **your covered auto** or any **non-owned auto**; or
    b.   Any other electronic equipment that is:
       1)   Necessary for the normal operation of the auto or the monitoring of the **auto's** operating system; or
       2)   An integral part of the same unit housing any sound reproducing equipment described in **a.** and permanently installed in the opening of the dash or console of your **covered auto** or any **non-owned auto** normally used by the manufacturer for the installation of a radio.

7.   To equipment designed or used for the detection or location of radar

8.   To global positioning systems (GPS)

9.   To any **non-owned auto** when used by **you**, any **family member** or **relative** without the owner's expressed permission to do so.

10.  To TV antennas, awnings, cabanas, or equipment designed to create additional living facilities.

11.  To any **non-owned auto** being maintained or used by any **person** in an **automobile related business.**

12.  To any part of the **auto**, or its equipment, that is not permanently attached to the vehicle in the area designated by the manufacturer at the time of **loss.**

13.  To loss to any item that does not qualify as equipment.

14.  To any specially built body, food vending equipment, catering equipment, or refrigeration equipment, nor to travel trailers

15.  To any auto driven by a **person** who has had their driving privileges rescinded or revoked, as permitted by law.

16.  To **loss** resulting from the pushing or pulling of a vehicle (other than a **trailer**) by **your covered auto**, or the pushing or pulling of **your covered auto** by another vehicle (other than a licensed tow truck).

17.  Due to the cost of delay in repair, nor will we pay more than the cost of repair and/or replacement of automobiles of standard makes and similar type, and we will not pay for any extraneous items or any finish or special customizing of such vehicle other than as originally and normally manufactured.

18.  To any vehicle while it is being used in any racing, speed, or demolition event or contest or stunting activity or preparation for such an event, contest, or activity. This exclusion applies regardless of whether the event, contest, or activity is pre-arranged or not.

19.  To any vehicle arising out of or during its commercial use for the transportation of any explosive substance, flammable liquid, or similar hazardous material, except transportation incidental to **your** ordinary household or farm activities.

20.  Due to taking or confiscation by governmental or civil authority, for any purpose, including temporary taking or temporary confiscation.

21.  Due to illegal sale, or repossession of a motor vehicle by the rightful owner.

22.  Due to theft, embezzlement or other unlawful conversion of **your covered auto** or **non-owned auto** after custody of said **auto** has been entrusted to another party for the purpose of subleasing, leasing or selling said automobile, whether under a consignment or not. This exclusion will apply whether the theft, embezzlement or unlawful conversion of the **auto** was committed by the **person** to whom the vehicle was entrusted or by any other **person.**

23.  Due to the destruction of any vehicle, in whole or in part, intentionally caused by, or at the direction of **you**, any **family member**, **relative**, or **resident.**

24.  To any auto due to **diminution of value.**

25.  To any **non-owned auto** which is not defined as a **your covered auto** or **temporary substitute auto** within this section.

26.  Arising out of the ownership, maintenance or use of **your covered auto** while it is rented to or leased to another.

27.  Arising out of the ownership, maintenance or use of any vehicle that is principally designed for use off public roads.

28.  While **your covered auto** is in the control of an excluded operator.

29. Resulting from the use of a rental or leased **auto** by an operator not authorized under the terms of the rental or lease agreement.
30. Resulting from loss of use of an **auto** or **temporary substitute auto** that arises from any **loss**.

## LIMIT OF LIABILITY

**Our** limit of liability for **loss** to **your covered auto** is the lowest of:

1. The **actual cash value** of the stolen or damaged property at the time of the **loss**, but not to exceed the **value rating**; reduced by the applicable deductible, and any applicable betterment, depreciation and/or unrelated **loss** damage; or

2. The amount necessary to replace the stolen or damaged property, but not to exceed the **value rating**; reduced by the applicable deductible, and any applicable betterment, depreciation and/or unrelated **loss** damage; or

3. The amount necessary to repair the damaged property to its pre-loss condition, but not to exceed the **value rating**; reduced by the applicable deductible and any applicable betterment, depreciation and/or unrelated **loss** damage. The amount necessary to repair the property does not include **Diminution in value**.

Payments for **loss** under this coverage are subject to the following:

1. **We** reserve the right to make payment for repairs or replacement of property with other property of like kind and quality, supplied by a source other than the manufacturer of **your covered auto** such as aftermarket, used, recycled, rebuilt, restored, or exchanged parts.

2. If the repair or replacement results in the betterment of the property or part, meaning that the value of the repaired or replaced property or part has been increased above its pre-loss market value as a result of the repair or replacement, you may be responsible, subject to applicable laws and regulation, for the amount of the betterment or depreciation.

3. Deductions for betterment or depreciation will be taken only for parts or specific repair process normally subject to repair or replacement during the useful life of the **auto**. Deductions will be limited to an amount equal to the proportion that the expired life of the part or specific repair process to be repaired or replaced bears to the normal life of that part or repair process.

4. In the event of a total **loss**, an adjustment for depreciation and physical condition will be made in determining the **actual cash value** of the **covered auto**.

5. **Our** payment will be reduced by the value of the salvage when **you** or the **owner** of the **auto** retains the salvage.

6. No **person** may receive a duplicate recovery under this policy for the same elements of damages.

7. **Actual cash value** is determined by the market value, age, and condition of the **auto** at the time of the **loss**.

8. **Our** payment will be reduced by any fees incurred after **we** request **you** to promptly relocate **your covered auto** and **you** fail to do so, or if **you** fail to promptly notify **us** of the **loss** and location of **your covered auto** and allow **us** to secure **your covered auto**.

## TOTAL LOSS

In the event that **we** determine **your covered auto** to be a total **loss**, you must allow **us** to move **your auto** to a storage location of **our** choice. Should **you** fail to promptly do so, **we** have the right to deduct any fees related to **your** failure to comply from the final payment. **We** reserve the right to retain **your auto** and/or its salvage property after **we** determine that **your auto** is a total **loss**.

## NOTICE – PAYMENT FOR AFTERMARKET CRASH PARTS

Physical damage coverage under this policy includes payment for aftermarket crash parts. If **you** repair the **auto** using more expensive original equipment manufacturer (OEM) parts, **you** may pay the difference. Any warranties applicable to these replacement parts are provided by the manufacturer or distributor of these parts rather than the manufacturer of **your auto**.

## LOSS PAYABLE CLAUSE

**Loss** or damage under this policy shall be paid as interest may appear to **you** and the loss payee shown in the **Declarations**.

**We** reserve the right to cancel the policy as permitted by the policy terms. Cancellation shall terminate the policy and this agreement as to the loss payee's interest. **We** will give the same advance notice of cancellation to the loss payee as **we** give to the **named Insured** shown in the **Declarations**; provided, however, failure to give such notice to the loss payee shall not affect the validity of the notice provided to **you**. If coverage for damage to **your covered auto** is provided because of **our** failure to give notice to the loss payee, then such coverage shall be limited to the loss payee's interest and shall not include any interest **you** may have in **your covered auto**.

When **we** pay the loss payee, **we** shall, to the extent of that payment, be subrogated to the loss payee's rights to recovery against any party, including, but not limited to, **you** or any other insured person.

If **you** surrender possession of the **covered auto** to the loss payee or the loss payee repossesses the **covered auto**, **we** will not pay the loss payee for loss occurring after the date the loss payee or its agent takes possession of the **auto**, or any loss occurring during the repossession. The interest of a loss payee shall be no greater than **your** interest under this policy, less any applicable deductible(s), betterment, depreciation, or unrelated **loss** damage.

When **we** pay a loss payee, **we** will not pay the loss payee more than the repair costs of **your covered auto**, **actual cash value** of **your covered auto** or the existing loan balance as of the date of **loss**, whichever is less, reduced by any applicable deductible and salvage value if **we** do not retain the salvage. Any insurance covering the interest of a loss payee shall not be protected and shall become invalid for any damage, destruction or other **loss** resulting from **your** illegal or fraudulent acts and/or omissions. This insurance covering the interest of a loss payee shall become invalid because of **your** illegal or fraudulent acts or omissions. Additionally, **we** will not pay for any **loss** caused by conversion, embezzlement, or concealment by **you** or anyone acting on **your** direction or behalf. **We** will not pay for any destruction or damage and/or **loss** to an **auto** caused by any intentional act done by, at the direction of, or on behalf of any insured person. Any and all defenses which **we** are able to assert against the **insured** shall be effective as to the loss payee and shall operate to invalidate the loss payee's interest under this policy

## OTHER INSURANCE

If other insurance also covers the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a non- owned auto shall be excess over any other collectible insurance, self-insurance, and any other source of recovery applicable to the loss.

## APPRAISAL CLAUSE

Any appraisal is both voluntary and non-binding. However, in an attempt to reduce litigation, the following Appraisal Clause would be utilized prior to litigation on behalf of you.

If we and you do not agree on the amount of loss related damage less any applicable betterment, depreciation, and/or pre-existing damage, then we and you agree to an appraisal as a precondition to any litigation. Each party will select a competent appraiser and notify the other party in writing of the appraiser's identity within 30 days of the request for appraisal.

The two appraisers will select an umpire. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A written decision agreed to by any two shall apply. Each party will:
1. Pay its chosen appraiser; and
2. Bear the expenses of the appraisal and umpire equally.

We do not waive any of our rights under this policy by agreeing to an appraisal.

## PART E – RENTAL REIMBURSEMENT COVERAGE

### THIS COVERAGE APPLIES ONLY:

if there is a premium shown for it on the Declarations, to the specific auto(s) for which a premium is shown on the Declarations, if you pay us the premium when due for this coverage, and then only to the limits of liability shown in the Declarations.

When there is a loss to one of your covered autos described in the Declarations, we will reimburse you for the expenses you incur to rent a substitute auto from a licensed auto rental agency, subject to the limits set forth in the Declarations and other limitations contained in this policy.

This coverage applies only if:
1. The claim for the damage to your covered auto is a covered claim under Coverage D – Damage to Your Auto and is not subject to any exclusion under this policy; and
2. Your covered auto is not drivable or does not comply with state safety requirements for more than 24 hours.

The following limitations and exclusions apply to this coverage:
1. This coverage does not apply when there is coverage under Transportation Expenses, Part D.
2. Reimbursement for your rental of a substitute auto shall be limited to the number of days reasonably required to repair or replace your covered auto.
3. The applicable limits are shown in the Declarations.

Rental charges will be reimbursed beginning:
1. 48 hours after the loss is reported to us; or
2. if your covered auto can be driven, when you deliver, or your representative delivers your covered auto to an auto repair shop for authorized repairs due to the covered loss.

Reimbursement for Rental charges will end when:
1. your covered auto has been repaired or replaced, regardless of whether or not you have retrieved the auto; or
2. the maximum coverage as shown on the Declarations is reached,
whichever occurs first.
3. If your covered auto is determined by us to be a total loss, coverage for rental charges will end 48 hours after we make an offer to pay the actual cash value of your covered auto.

You must provide us written proof of your rental charges. Duplicate recovery for identical elements of damages is not permitted under this policy.

## PART F – TOWING AND LABOR COVERAGE

### THIS COVERAGE APPLIES ONLY:

if there is a premium shown for it on the Declarations, to the specific auto(s) for which a premium is shown on the Declarations, if you pay us the premium when due for this coverage, and then only to the limits of liability shown in the Declarations.

You may claim up to the maximum amount under this coverage (limit as shown in the Declarations) up to twice during a semi- annual policy and up to four times during an annual policy.

This coverage applies only to your covered auto for which a premium charge and amount of coverage are shown in the Declarations for Towing and Labor Coverage.

We will only pay for labor performed at the place of disablement.

## PART G - DUTIES AFTER AN ACCIDENT OR LOSS

We may have no duty to provide coverage under this policy unless any person seeking coverage under this policy fully complies with the following duties:

1.  Even if any **person** seeking coverage under this policy is not at fault for an **accident**, **you** or the **person** seeking coverage must call **us** as soon as reasonably possible after an **accident** to report the **accident**; and must provide **us** with how, when and where the **accident** or loss happened and the names and addresses of any witnesses to the **accident** and any **persons** known to have suffered **bodily injury** or **property damage** as a result of the **accident**.

2.  A **person** seeking any coverage must:
    a.  Cooperate with **us** in the investigation, settlement or defense of any claim or suit. Such cooperation includes but is not limited to:
        1)  Communicating with any attorney appointed to defend that **person**;
        2)  Attending, and getting witnesses to attend, depositions, hearings and trials;
        3)  Securing and giving evidence;
        4)  Completing documents required in litigation; and
    b.  Promptly send **us** copies of any notices or legal papers received in connection with the **accident** or loss.
    c.  Submit, as often as **we** reasonably require:
        1)  To physical exams by physicians **we** select. **We** will pay for these exams.
        2)  To examinations under oath at a place of **our** choosing, and require the **person** to correct and sign under oath the transcript of the examination(s) under oath.
        3)  To a request for production of documents at the time of the examination under oath and any other time, and allow the copying of any documents **we** or **our** designated representative requests. This includes, but is not limited to, all documents concerning **your** income (payroll records, profit and loss statements, etc.), finances, credit, and any other documents **we** indicate are reasonable and necessary to investigate and process **your** claim. Such documents must be provided to **us** or **our** designated representative in a timely manner, and if requested, prior to an examination under oath.
    d.  Authorize **us** to obtain:
        1)  Medical reports;
        2)  Any documents **we** indicate are necessary to investigate and process **your** claim; and
        3)  Event data recorders and/or sensing and diagnostic modules or any other recording device for the purpose of retrieving data following an **accident** or loss.
    e.  Submit a proof of loss when required by **us**.
    f.  Provide any statements to **us** when **we** request them, whether in writing, oral, or recorded form, or in **person**, at **our** option.

3.  A **person** seeking coverage under Part D - **Damage to Your Auto** must also:
    a.  Take reasonable steps after loss, at **your** expense, to protect **your covered auto** or a **non-owned auto** and its equipment from further loss.
    b.  Report the loss, in the event of a hit-and-run, theft, or vandalism and the discovery thereof, within 24 hours of such to the police, peace, or judicial officers, or Commission of Motor Vehicles.
    c.  Permit **us** to inspect and appraise the damaged property as often as **we** reasonably require before its repair or disposal.
    d.  Send **us**, within 30 days of the loss, **your** signed sworn statement in proof of loss in the form provided to **you**; or, if no form is provided to **you**, a form of **your** own creation showing the date and time of loss, the cause of loss, the **actual cash value** and amount of loss to **your covered auto**.

## PART H - GENERAL PROVISIONS

### TERMS CONFORMED TO STATUTES

This policy shall be deemed amended to conform to the statutes of the state listed in **your** application if any provision fails to conform to such statutes. However, invalidation of any section of this policy does not invalidate any other sections. Any dispute as to coverages or the provisions of this policy shall be determined and governed by the law of the state for which the policy is written.

### CHANGES

This policy, any endorsements to this policy, the **Declarations**, and **your** application contain all the agreements between **you** and **us**. Their terms may not be changed or waived except by endorsement issued by **us**.

The premium for this policy is based on the information **you** provided to **us** or other sources **we** use. **You** agree to cooperate with **us** in determining if this information is accurate and complete. **You** agree to notify **us** of any changes during the policy period. If this information is incomplete, incorrect, or changes during the policy period, **you** agree that **we** may adjust **your** premium, or take other legally permissible action.

Changes that may result in a premium change include, but are not limited to, **you** or a **family member or resident** obtaining a driver's license or operator's permit, or changes in:
1.  **Your** address;
2.  **Your** garaging address;
3.  **Persons** using **your** covered **auto(s)**;
4.  **Resident** changes;
5.  The number, type, or use classifications of **your** covered **autos**; and
6.  Coverages, deductibles, or limits of liability.

If a change requires a premium adjustment, **we** will make the premium adjustment in accordance with **our** manual rules and such adjustment shall be calculated as of the effective date of the change.

**You** must notify **us** within 30 days of the time when a **person** becomes a **resident** of **your** household who was not previously listed on the policy.

If **we** make a change that broadens coverage under this edition of **your** policy without additional premium charge, such change will automatically apply to **your** policy as of the date **we** implement the change in **your** state. This paragraph does not apply to changes implemented with a general

program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of **your** policy; or
2. An Amendatory Endorsement

## MISREPRESENTATION, OR FRAUD AND OMISSIONS

This policy was issued in reliance on the information provided on **your** insurance application, including, but not limited to information regarding license and driving history of **you, family members, relatives, residents all persons** of driving age residing in **your** household, any additional operators, the description of the vehicles to be insured, the location of the principal place of garaging, and **your** place of residence.

1. **We** do not provide coverage for any **person** who has made fraudulent statements or engaged in fraudulent conduct, concealed or misrepresented any material fact or circumstance in connection with any **accident** or loss for which coverage is sought under this policy.
2. **We** do not provide coverage for any **person** if **you** (or anyone on **your** behalf) made fraudulent statements or misrepresented or concealed anything material in the presentation of **your** application for insurance.
3. If **you** or any **person** seeking coverage under this policy make any fraudulent statements or engage in fraudulent conduct in connection with any **accident** or loss for which coverage is sought under this policy and **your** state restricts **our** right to rescind all or any portion of this policy, then **you** shall repay **us** for any payments or costs **we** incur associated with such payments that **we** would not have had to make if **our** right to rescind was not limited. Costs include (but are not limited to) attorney fees, settlement payments, investigation fees and reports, postage, copying charges, deposition fees, mileage, and fees for experts.

**We** may elect to rescind **your** policy if permitted by law and not with respect to any injury to a third party, if at any time we become aware of a misrepresentation that would have made the risk ineligible or resulted in a higher premium charge. In the event we are required to make any payment, **our** obligation shall be limited to those coverages or benefits the law restricts **us** from rescinding. **Our** obligations will not include any other coverage or benefit that the applicable law does not restrict **us** from rescinding.

## OUR RIGHT TO RECOVER PAYMENT

If **we** make a payment under this policy, and the **person** to or for whom payment was made has a right to recover damages from another, **we** shall be subrogated to that right. **We** shall be entitled to the payment, reimbursement, and subrogation as provided in this section. That **person** shall: secure and not prejudice **our** rights; hold in trust such rights for us; and do whatever is necessary to enable **us** to exercise **our** rights.

If **we** make a payment under this policy and the **person** to or for whom payment is made recovers damages from another, that **person** shall:

1. Hold in trust for **us** the proceeds of the recovery; and
2. Reimburse **us** to the extent of **our** payment within 30 days of receipt of the proceeds of any recovery.

If payment is made to an **insured person** under Part B – Medical Payment Coverage, **we** are entitled to reimbursement to the extent of **our** payment, reduced by **our** share of the expenses, costs, and attorney fees incurred by the **insured person** in connection with any recovery from a liable person.

If an insured person under this policy makes recovery from a responsible party, without **our** written consent, the insured person's right to payment under any affected coverage will no longer exist.

**Our** right to reimbursement out of the proceeds of any recovery from another may not be exercised until the **person** or organization to whom we have made payment under this policy has been fully compensated for their damages.

## POLICY PERIOD AND TERRITORY

This policy applies only to **accidents** and losses that occur during the policy period as shown in the **Declarations** and within the policy territory. The policy territory is the United States of America, its territories or possessions; and Canada.

## TERMINATION

**A. Dishonored Checks, Payments or Transactions**
If **your** payment to start **your** initial or renewal policy and institution on which it is drawn does not honor it when **we** present it for payment, then we will exercise **our** right to declare **your** policy void from its inception. **We** reserve the right to also elect the remedy of canceling **your** policy for non-payment of premium. **We** may cancel as an alternative to or in conjunction with **our** exercise of **our** right to void coverage.

**B. Cancellation. This policy may be cancelled during the policy period as follows:**
1. This policy may be canceled by **you** or by a premium finance company by surrendering the original thereof to **us** or our authorized agents; or by mailing us written notice stating when thereafter the cancellation shall be effective.
2. **We** may cancel this policy for any reason if the notice is mailed within 60 days of the initial policy period.
3. After this policy is in effect for 60 days, or if this is a renewal or continuation policy, we may cancel for one or more of the following reasons:
    a. **We** will give **you** 10 days' notice for nonpayment of premium.
    b. **We** will give **you** 20 days' notice for the following reasons:
      (1) The named insured or any driver of the insured vehicle shall be convicted of:
        (A) Driving while intoxicated;
        (B) Homicide or assault arising out of the use of a motor vehicle; or
        (C) Three (3) separate convictions of speeding or reckless driving, or any combination of the two (2) during the policy period, including three (3) months prior to the effective date of the policy;
      (2) The driver's license or motor vehicle registration of the named insured or of any other operator who either resides in the same household or customarily operates an automobile insured under this policy has been under suspension or revocation during the policy period or, if the policy is a renewal, during its policy period or the one hundred eighty

(180) days immediately preceding its effective date;

(3) Fraud or misrepresentation of a material fact, the knowledge of which would have caused the insurer to decline to issue a policy; or

(4) Nonpayment of membership dues when they are a requirement in the bylaws, agreements, or other legal instruments of a company before issuance and maintenance of a policy under this subchapter.

c. **We** will give **you** 20 days' notice if **we** choose to exclude an operator for the following reasons:

1) If **you**, a **family member**, **relative**, **resident** or any operator who either resides in the same household or customarily operates an automobile insured under the policy has that **person's** driver's license suspended or revoked. This must have occurred: During the policy period; or If the policy is a renewal, during its policy period or the one hundred eighty (180) days immediately preceding its effective date.

2) If **you**, a **family member**, **relative**, **resident** or any operator who either resides in the same household or customarily operates an automobile insured under the policy has engaged in a competitive speed contest while operating an automobile insured under the policy; or

3) If **you**, a **family member**, **relative**, **resident** or any operator who either resides in the same household or customarily operates an automobile insured under the policy, during the thirty-six months immediately preceding the notice of cancellation or nonrenewal, has been convicted of or forfeited bail for any of the following:

a. Criminal negligence resulting in death, homicide, or assault and arising out of the operation of a motor vehicle;

b. Operating a motor vehicle while intoxicated or while under the influence of a drug;

c. A reason as described in Arkansas Code Section 23-89-303

4) Any other reason permitted by law.

## C. NONRENEWAL

If **we** decide not to renew or continue this policy, **we** will mail notice to **you** at the address shown in **our** records. Notice will be mailed at least 30 days before the end of the policy period. If the policy period is one (1) year or longer, **we** will have the right not to renew or continue this policy at each anniversary of its original effective date.

## D. AUTOMATIC TERMINATION

If **we** offer to renew or continue and **you** or **your** representative do not accept, this policy will automatically terminate at the end of the current policy period. If **you** fail to pay the required renewal or continuation premium when due, this shall mean that **you** have not accepted **our** offer. If **you** obtain other insurance on **your covered auto**, any similar insurance provided by this policy will terminate as to that **auto** on the effective date of the other insurance.

All coverage associated with any vehicle listed in this policy will automatically terminate upon the sale or transfer of vehicle ownership.

## E. ACCEPTANCE OF LATE PREMIUM PAYMENTS.

**We** may accept late premium payments, but **we** reserve the right to reject such payments. **Your** late payment, even if **we** elect to accept it, may result in a gap in coverage or the issuance of a replacement policy, or both. All coverage elections, rejections, driver exclusions and other policy terms, including the representations **you** made in the procurement of **your** policy shall apply to the reinstated, rewritten, renewal or replacement policy. Acceptance of a late payment, even if **we** do not enforce **our** right to impose a gap in coverage, shall not affect **our** rights to reject future payments or strictly enforce **your** obligation to make payments on or before their due date. No single waiver or series of waivers of **our** right to reject late payments or enforce a gap in coverage shall preclude any further or future exercise thereof.

## TRANSFER OF YOUR INTEREST IN THIS POLICY

**Your** rights and duties under this policy may not be assigned without **our** written consent. However, if a **named insured** shown in the **Declarations** dies, coverage will be provided for:

1. The surviving spouse, if residing in the same household at the time of death;
2. The legal representative of the deceased **person** as if a **named insured** shown in the **Declarations**. This applies only with respect to the representative's legal responsibility to maintain or use **your covered auto**.

Coverage will only be provided until the end of the policy period.

## FINANCIAL RESPONSIBILITY DISCLAIMER

Either at **your** request or by requirement of state law, **we** may assist **you** in satisfying **your** obligations to provide proof of financial responsibility to a state by making certain electronic or paper filings with that state's appropriate regulatory authority. The notification process to a state regulatory authority of the issuance or termination of **your** insurance is subject to electronic and human error. The consequences that can result from this error and the ensuing result that the state's records do not reflect that **you** have satisfied **your** financial responsibility requirements can be severe and can include, but are not limited to: (i) the suspension of **your** license, (ii) the imposition of fines and penalties, and (iii) incarceration in a jail or other holding facility.

**Depending on the nature of the filing we make, we have charged no fee or a nominal fee. Due to the no fee or nominal fee we charge to assist you in satisfying your financial responsibility requirements and the resulting serious consequences for failing to provide that assistance, we cannot assume any liability for such failure in excess of the fee charged, even if such failure is through our fault or the fault of any agent, employee or producer.**

## WE ARE HERE TO SERVE YOU...

As **our** policy holder, **your** satisfaction is very important to us. If **you** have a question about a policy, if **you** need assistance with a problem, or if **you**

have a claim, you should first contact your insurance producer or us at 800-875-4422. Should you have a valid claim, we fully expect to provide a fair settlement in a timely fashion.

Policyholders have the right to file a complaint with the Arkansas Insurance Department (AID). You may call AID to request a complaint form at (800) 852-5494 or (501) 371-2640 or write the Department at: Arkansas Insurance Department, 1 Commerce Way, Suite 102, Little Rock, AR 72202

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

UNITED SECURITY HEALTH AND CASUALTY                    PLAINTIFF
INSURANCE COMPANY

v.                              No. *2:23cv35-BSM*

DEONTA MILLER, LECEEDRIC HUNTER, TERESA HAWKINS,        DEFENDANTS
As Administratrix for the ESTATE of JEREMY TILSON, Deceased,
DEVON BEDFORD, CARLTON OTEY, and TEKILLIA HAMMOND

**EXHIBIT B TO COMPLAINT FOR DECLARATORY JUDGMENT**

**FILED**

At 9:30 O'clock A M

NOV 08 2021

CHASITY DeSUE
PHILLIPS COUNTY CIRCUIT CLERK
By _____ D.C.

IN THE CIRCUIT COURT OF PHILLIPS COUNTY, ARKANSAS
CIVIL DIVISION

DEONTA MILLER AND
LECEEDRIC HUNTER                                              PLAINTIFF

VS.                           NO. 54CV-21-164

CARLTON OTEY                                                 DEFENDANT

## COMPLAINT

Come the Plaintiffs, Deonta Miller and Leceedric Hunter, by their attorney, Kyle Stoner, and for their cause of action against the Defendant, Carlton Otey, alleges and states:

1.      Plaintiffs are a citizen and resident of Phillips County, Arkansas. That at the time of the accident the Defendant was a citizen and resident of Phillips County, Arkansas. That this Court has jurisdiction of the subject matter and the parties hereto.

2.      That at all times mentioned herein, the Plaintiffs, Deonta Miller and Leceedric Hunter, were passengers in Tekillia Hammond's car driven by Carlton Otey. That at all times mentioned herein the Defendant, Carlton Otey, was the operator of a 2008 Cadillac Escalade.

3.      That on or about September 18, 2020, at approximately 7:35 a.m., the Plaintiffs were passengers in the vehicle driven by Carlton Otey and were traveling North on State Highway 1 when the Defendant carelessly swerved and oversteered the vehicle causing the vehicle, hit multiple road signs and overturned the 2008 Cadillac Escalade.  The negligence of Defendant, Carlton Otey, proximately caused the damage and injuries to the Plaintiffs as more particularly hereinafter described.

4.      That Plaintiffs were without fault which caused or contributed to their injuries as a

result of the collision in Defendant's vehicle, as aforesaid. The collision herein complained of was proximately caused by the acts and omissions of said Defendant, Carlton Otey, including, but not limited to the following particulars, to-wit:

a. Failing to yield the right of way to persons in position on said road;
b. Failing to keep the automobile he was driving under proper control;
c. Failing to keep a proper look-out;
d. Failing to exercise ordinary care under the existing circumstances;
e. Failing to maintain, operate and drive the vehicle in a reasonable proper and prudent manner;
f. Operating the vehicle in disregard to the rules of the road regarding the laws of the State of Arkansas.

5. As a proximate result of the negligence of Carlton Otey, Deonta Miller sustained a severe injury to his head, and neck, as well as a shock to his entire nervous system. As a proximate result of said injury, Deonta Miller has undergone excruciating pain and suffering and mental anguish in the past and will continue to undergo such pain and suffering and mental anguish in the future, has incurred medical expenses in the past and will continue to incur such expenses in the future. Medical and special expenses incurred by Deonta Miller as of this date, total $8,484.65.

6. As a proximate result of the negligence of Carlton Otey, Leceedric sustained a severe injury to his foot, and arm, as well as a shock to his entire nervous system. As a proximate result of said injury, Leceedric Hunter has undergone excruciating pain and suffering and mental anguish in the past and will continue to undergo such pain and suffering and mental anguish in the future, has incurred medical expenses in the past and will continue to incur such expenses in the future. Medical and special expenses incurred by Leceedric Hunter as of this date, total $2,819.11.

7. Plaintiff respectfully requests a trial by jury.

WHEREFORE, PREMISES CONSIDERED the Plaintiffs, Deonta Miller and Leceedric Hunter prays for judgment against the Defendant, Carlton Otey for the following:

(a) $8,484.65 for the medicals and special expenses incurred by Deonta Miller as of this date, together with 6% interest until the time of trial;

(b) $2,819.11 for the medicals and special expenses incurred by Leceedric Hunter as of this date, together with 6% interest until the time of trial;

(c) For an amount undetermined at this time, but to be determined at trial, said amount being in excess of the minimum amount required for diversity of jurisdiction in federal court for Deonta Miller's injuries; his excruciating pain and suffering and mental anguish experienced in the past and that which he will undergo in the future, and for his continuing medical expenses, which will be incurred in the future;

(d) For an amount undetermined at this time, but to be determined at trial, said amount being in excess of the minimum amount required for diversity of jurisdiction in federal court for Leceedric Hunter's injuries; his excruciating pain and suffering and mental anguish experienced in the past and that which he will undergo in the future, and for his continuing medical expenses, which will be incurred in the future.

(e) For their cost, a reasonable attorney's fee, and all proper relief this Court may find the Plaintiff entitled in this premises.

Respectfully submitted,

By: _____

Kyle Stoner (2015086)
STONER LAW PLLC
P.O. Box 34
Helena, AR 72342
(870) 228-9792
kyle@kylestonerlaw.com

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

UNITED SECURITY HEALTH AND CASUALTY                    PLAINTIFF
INSURANCE COMPANY

v.                          No. 2:23cv35-BSM

DEONTA MILLER, LECEEDRIC HUNTER, TERESA HAWKINS,        DEFENDANTS
As Administratrix for the ESTATE of JEREMY TILSON, Deceased,
DEVON BEDFORD, CARLTON OTEY, and TEKILLIA HAMMOND

## EXHIBIT C TO COMPLAINT FOR DECLARATORY JUDGMENT

## IN THE CIRCUIT COURT OF PHILLIPS COUNTY, ARKANSAS
## PROBATE DIVISION

In the Matter of the Estate of:
Jeremy Tilson, Deceased,

CASE NO.: 54-PR-2020-__77-3__

### PETITION TO APPOINT SPECIAL ADMINISTRATOR TO PROSECUTE TORT ACTION AND TO APPROVE ATTORNEY'S FEE AGREEMENT

COMES NOW, Teresa Hawkins, whose interest in the estate of the decedent is that of sole legal guardian of KT the only heir of the decedent, and she requests that Teresa Hawkins be appointed the special administrator of the estate of the decedent for the purpose of retaining counsel to prosecute the decedent's wrongful death claim. The facts, so far as they are known, to and can be reasonably ascertained by the petitioners, are:

1.  **DECEDENT:** The decedent, Jeremy Tilson, Jr., age 29, (Date of Birth: ▉▉▉▉▉▉▉▉▉ who resided in West Helena, Arkansas, died, intestate, on or about September 18, 2020, as the result of an automobile accident in Arkansas County, Arkansas, on State Highway 1 near the town of St. Charles Arkansas when the vehicle, in which he was a passenger, was chased by law enforcement and ran off the road. The decedent's death was caused by injuries he sustained when he was violently ejected from the vehicle.

2.  **THE BENEFICIARIES:** The surviving beneficiaries, as defined by Arkansas Code Annotated § 16-62-102, of the decedent, and their respective ages, relationships to the decedent, and present residence addresses are as follows:

| Name | Age | Relationship | Residence Address |
|------|-----|--------------|-------------------|
| K. Tilson | Minor | Daughter | West Helena, Arkansas |
| F. Tilson | Adult | Sister | West Helena, Arkansas |
| L. Tilson | Adult | Sister | West Helena, Arkansas |
| Bobby Zigler, Jr. | Adult | Brother | West Helena, Arkansas |
| Others to be determined | | | |

FILED AT 10:15 O'CLOCK P M

SEP 24 2020          Page 1 of 3

LINDA WINFIELD, COUNTY & PROBATE CLERK

3.    **THE VALUE OF THE ESTATE:**  The probable value of the estate of the decedent is:  real property - undetermined; personal property undetermined.

4.    **PERSON TO BE APPOINTED:**  The Petitioners nominate Teresa Hawkins as special administrator.  Petitioners wish to retain the Law Offices of J.F. Valley, Esq., P.A. to represent the decedent's wrongful death claim.  (See fee agreement attached hereto as Exhibit "A" and made a part hereof.)  Teresa Hawkins is qualified to serve as the special administrator in that she is over the age of 18, has not been convicted of a felony, she is the sole legal guardian of only heir of the decedent as she is now without both parents.

**WHEREFORE,** the Petitioners request that this court enter an order determining the fact of the death of the decedent, and appointing Teresa Hawkins. as special administrator of the estate for the purpose of retaining the Law Offices of J.F. Valley, Esq., P.A. to prosecute the decedent's wrongful death claim; approving the attorney's fee contract and permitting the wrongful death action to go forward and permitting the special administrator to serve without bond.

Respectfully submitted,

Teresa Hawkins, For the Petitioners

J. F Valley, Esq., P.A.
P.O. Box 451
423 Rightor Street
Helena, Arkansas  72342
Telephone:  (870) 619-1750
Fax:  (870) 619-1760
Email:  james@jamesfvalley.com
Attorney for the Petitioners

## VERIFICATION

**STATE OF ARKANSAS**

**COUNTY OF PHILLIPS**

I, Teresa Hawkins, do hereby state under oath that the matters and things set forth in the above and foregoing petition are true and correct to the best of my knowledge, information and belief.

Teresa Hawkins

Subscribed and sworn to before me,

on this 24th day of September, 2020.



NOTARY PUBLIC

My Commission Expires: 5 - 2 - 2026 (SEAL)

STATE OF
NOTARY
PUBLIC
ARKANSAS
J. F. VALLEY
MY COMMISSION # 12607705
EXPIRES: May 2, 2026
Phillips County

O

## J. F. VALLEY, ESQ., P.A. ------------Contingent Fee Agreement

The undersigned, _Teresa Hawkins_ , (hereinafter known as Client) requests the legal services of J. F. VALLEY, ESQ., P.A. (hereinafter known as Attorney) for representation to assert a claim for damages against _un Known tort feasor_ arising out of an occurrence on or about _9/18/20~_ in which Client was injured or claims to have sustained injury and damage.

Attorney shall perform all reasonable, necessary and usual services in matters of this kind including, but not limited to: investigation of facts, gathering of evidence, preparation of exhibits, interviewing witness(es), compiling records of expenses, and negotiations with the adversary's insurance carrier or other representative.

If a settlement is not effected which is satisfactory to the Client, Attorney agrees, at his discretion, to initiate alternative dispute resolution proceedings, arbitration, or bring an action against _unknown tort feasor_ to attain the benefits provided by judicial oversight of the claim.

In connection with this, Attorney will file all necessary court papers, attend pretrial conferences and status conferences, prepare appropriate interrogatories, requests for admissions and requests for production of documents, attend and take appropriate depositions, and continue settlement negotiations. If a settlement satisfactory to Client cannot be attained, Attorney agrees to try the case in the trial court unless permitted to withdraw pursuant to the Arkansas/Mississippi Rules of Professional Conduct.

If a judgment in favor of Client is obtained in the trial court and the adversary appeals, Attorney shall provide all appropriate services in resistance to the appeal, including review of the trial court's record, preparation of appropriate briefs, and oral argument in the reviewing courts.

If the trial of the case should result in a judgment that is adverse to Client, Attorney shall not be obligated to appeal. Attorney shall advise Client of the opinion concerning the advisability of appeal and may undertake to provide services as appellate counsel under a new, separate and distinct FEE AGREEMENT.

The fee of Attorney shall be contingent upon the result obtained. There shall be no legal obligation by Client to pay Attorney any fee if nothing is recovered from the adversary or from the Client's insurer in an underinsured or uninsured situation.

However, Client is responsible for all expenses incurred in the prosecution of the claim. Client gives permission to Attorney to advance the payment of costs and expenses, but Client acknowledges the Client remains responsible for payment of said costs and expenses and agrees to reimburse Attorney for any such costs and expense for which Attorney advances payment. Client may reimburse Attorney as costs and expenses are incurred or, if Client reimburses Attorney upon settlement, Client agrees that such costs and expenses shall be paid out of Client's portion of the settlement proceeds.

The legal fee of Attorney shall be THIRTY THREE AND ONE-THIRD percent (33 1/3%) of the gross amount recovered, if settlement is achieved without the necessity of filing suit; FORTY percent (40%) of the gross settlement or judgment if it is necessary to file suit; and FORTY-FIVE percent (45%) of the ultimate gross settlement or judgment following the trial and any appeal undertaken by the adversary.

In the event of discharge by Client and in the event Client subsequently recovers money or other property as a result of this action, Client shall be indebted to Attorney for legal fees based upon the value in Helena, Arkansas of legal services rendered and for any costs and expenses advanced by Attorney. This contract constitutes a lien.

Attorney reserves the right to withdraw from representation if Client fails to cooperate or follow Attorney's advice on a material matter, or if any fact or circumstance arises or is discovered that would, in Attorney's view, render continuing representation unlawful or unethical.

Date: _9/23/20~_     Client: _Teresa A. Hawkins_

Date: _9/24/2020_     Attorney: _J F Valley clg_

J. F. VALLEY, ESQ. P.A.

Date:     Witness:

_Teresa Hawkins as Guardian of Kaymaker Filson_

FILED AT 10:15 O'CLOCK A M

SEP 24 2020

LINDA WINFIELD, COUNTY & PROBATE CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

UNITED SECURITY HEALTH AND CASUALTY                      PLAINTIFF
INSURANCE COMPANY

v.                              No. 2:23cv35-BSM

DEONTA MILLER, LECEEDRIC HUNTER, TERESA HAWKINS,          DEFENDANTS
As Administratrix for the ESTATE of JEREMY TILSON, Deceased,
DEVON BEDFORD, CARLTON OTEY, and TEKILLIA HAMMOND

**EXHIBIT D TO COMPLAINT FOR DECLARATORY JUDGMENT**

**547681**

| Drivers' Last Names | Otey | | Page 1 of | 11 |
|---|---|---|---|---|

Juvenile Involved ☐ Yes ☒ No  **ARKANSAS MOTOR VEHICLE CRASH REPORT**  Severity ☒ Fatality ☐ Injury ☐ PDO

Rev. 2019-1

| # of Motor Vehicles *Automobiles, Motorcycles, etc.* | 1 | | Crash Report # | 010920036 |
|---|---|---|---|---|

| # of Non-Motorists *Pedestrians, Bicyclists, etc.* | 0 | Investigating Agency | STATE POLICE TROOP E |
|---|---|---|---|

| Investigating Officer | TRP | Green | Martino | | 579 | Signature |
|---|---|---|---|---|---|---|
| | Rank | Last | First | Middle | Suffix | Badge # |

## CRASH DATE AND TIME

| Date of Crash *(MM/DD/YYYY)* | Time of Crash *(HH:MM AM/PM)* | Date Police Notified | Time Police Notified | Date Police Arrived | Time Police Arrived |
|---|---|---|---|---|---|
| 09/18/2020 | 07:35 AM | 09/18/2020 | 07:40 AM | 09/18/2020 | 08:06 AM |

## CRASH LOCATION

| County | City | Latitude | Longitude |
|---|---|---|---|
| Arkansas | St. Charles | 34.371356° N | 91.129559° W |

| Road/Street/Highway | Section | Log Mile | At Intersection With |
|---|---|---|---|
| HWY 1 (1) | 5 | 13.566 | |

Not in City, but _____ of the City Limits of _____
*Distance (feet or miles to two decimal places)    Direction (N/S/E/W)    City*

Not at Intersection, but _____ of _____
*Distance (feet or miles to two decimal places)    Direction (N/S/E/W)    Reference point*

## CRASH FACTORS AND CONDITIONS

| First Harmful Event | 313 | Location of First Harmful Event | 103 | School Bus Related | 000 | Roadway Surface Condition | 100 | Weather Conditions |
|---|---|---|---|---|---|---|---|---|

**Non-Collision**
100 Overturn/rollover
101 Fire/explosion
102 Immersion, full or partial
103 Jackknife
104 Cargo/equipment loss or shift
113 Fell/jumped from motor vehicle
115 Object thrown or fallen on or near motor vehicle
198 Other non-collision

**Collision with Non-Fixed Object**
200 Pedestrian
201 Pedalcycle
202 Other non-motorist
203 Railway vehicle (train, engine)
204 Animal (live)
205 Motor vehicle in transport
206 Parked motor vehicle
207 Falling/shifting cargo or anything set in motion by motor vehicle
208 Work zone/maintenance equipment
298 Other non-fixed object

**Collision with Fixed Object**
300 Impact attenuator/crash cushion
301 Bridge overhead structure
302 Bridge pier or support
303 Bridge rail
304 Cable barrier
305 Culvert
306 Curb
307 Ditch
308 Embankment
309 Guardrail face
310 Guardrail end
311 Concrete traffic barrier
312 Other traffic barrier
313 Tree (standing)
314 Utility pole/light support
315 Traffic sign support
316 Traffic signal support
317 Other post, pole, or support
318 Fence
319 Mailbox
320 Building
398 Other fixed object
999 Unknown

*If 198, 298, or 398, describe:*

**Location of First Harmful Event**
100 On roadway
101 Shoulder
102 Median
103 Roadside
104 Gore
105 Separator
106 In parking lane or zone
107 Off roadway, location unknown
108 Outside right-of-way (trafficway)
999 Unknown

**Type of Collision** | 100
100 Single vehicle crash
200 Front to rear
201 Front to front
202 Angle
203 Sideswipe, same direction
204 Sideswipe, opposite direction
205 Rear to side
206 Rear to rear
980 Other (describe below)

**Relation to Junction** | 000
000 Non-junction
100 Intersection
101 Intersection related
102 Entrance or exit ramp
103 Entrance or exit ramp related
104 Railway grade crossing
105 Crossover related
106 Driveway access
107 Driveway access related
108 Shared-use path or trail
109 Acceleration or deceleration lane
110 Through roadway
198 Other location within an Interchange area (median, shoulder, and roadside)
999 Unknown

**School Bus Related**
000 No, school bus not involved
100 Yes, school bus directly involved
101 Yes, school bus indirectly involved

**Type of Intersection** | 000
000 Not an Intersection
100 Four-way Intersection
101 T-Intersection
102 Y-Intersection
103 L-Intersection
104 Traffic circle
105 Roundabout
106 Five-point or more
999 Unknown

**Road System** | 102
100 Interstate
101 US highway
102 State highway
103 County road
104 City street
105 Frontage road
106 Ramp
999 Unknown

**Property Classification** | 100
100 Public property
101 Private property

**Trafficway Classification** | 100
100 Trafficway, on road
101 Trafficway, not on road
102 Non-trafficway (describe below)

**Roadway Surface Condition**
100 Dry
101 Wet
102 Snow
103 Slush
104 Ice or frost
105 Water (standing or moving)
106 Sand
107 Mud, dirt, or gravel
108 Oil
198 Other
999 Unknown

**Light Condition** | 100
100 Daylight
101 Dawn
102 Dusk
103 Dark – lighted
104 Dark - not lighted
105 Dark - unknown lighting
198 Other
999 Unknown

**Environmental Factors**
*Check all that apply.*
☒ 000 None
☐ 100 Weather conditions
☐ 101 Visual obstructions
☐ 102 Glare
☐ 103 Animals in roadway
☐ 198 Other:
☐ 999 Unknown

**Weather Conditions**
*Check all that apply.*
☒ 100 Clear
☐ 101 Cloudy
☐ 102 Fog
☐ 103 Smog
☐ 104 Smoke
☐ 105 Rain
☐ 106 Sleet
☐ 107 Hail
☐ 198 Other
☐ 108 Freezing rain or freezing drizzle
☐ 109 Snow
☐ 110 Blowing snow
☐ 111 Severe crosswinds
☐ 112 Blowing sand, soil, or dirt
☐ 999 Unknown

**Roadway Conditions**
*Check all that apply.*
☒ 000 None
☐ 100 Backup due to prior crash
☐ 101 Backup due to prior non-recurring incident
☐ 102 Backup due to regular congestion
☐ 103 Toll booth / plaza related
☐ 104 Road surface condition (wet, icy, snow, slush, etc.)
☐ 105 Debris
☐ 106 Ruts, holes, or bumps
☐ 107 Work zone
☐ 108 Worn, travel-polished surface
☐ 109 Obstruction in roadway
☐ 110 Traffic control device inoperative, missing, or obscured
☐ 111 Shoulders (none, low, soft, high)
☐ 112 Non-highway work
☐ 198 Other:
☐ 999 Unknown

## WORK ZONE CRASH INFORMATION

| Work Zone | 000 | Location Relative to Work Zone | 970 | Work Zone Type | 970 | Worker(s) Present | 970 | Law Enforcement Present | 970 |
|---|---|---|---|---|---|---|---|---|---|

**Work Zone**
000 No
100 Yes
999 Unknown

**Location Relative to Work Zone**
100 Before the first work zone warning sign
101 Advance warning area
102 Transition area
103 Activity area
104 Termination area
970 Not applicable
999 Unknown

**Work Zone Type**
100 Lane closure
101 Lane shift or crossover
102 Work on shoulder or median
103 Intermittent or moving work
198 Other
970 Not applicable
999 Unknown

**Worker(s) Present**
000 No
100 Yes
970 Not applicable
999 Unknown

**Law Enforcement Present**
000 No law enforcement presence
100 Officer present
101 Law enforcement vehicle only present
970 Not applicable
999 Unknown

**CRASH REPORT - CRASH SUMMARY**

| Crash Report # | 010920036 | | | | Page | 2 | of | 11 |

| Photos Taken | ATTACHMENTS | |
|---|---|---|
| ☐ Yes | **Type** | **Description** |
| ☑ No | Driver statement | Statement from Driver 1 |
| | Alcohol test submission form | Alcohol test submission form for Driver 1 |
| | Drug test submission form | Drug test submission form for Driver 1 |
| | Witness statement | Statement from Witness 1 |
| | Witness statement | Statement from Witness 2 |
| | Witness statement | Statement from Witness 3 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

### NON-VEHICULAR PROPERTY DAMAGE

| Description of Property Damage | Damage Estimate | Owner Contacted | Name | Street | Address City | State | Postal Code |
|---|---|---|---|---|---|---|---|
| 2 HIGHWAY SIGNS | $300 | | Arkansas Department of Transportation - Legal Division | P.O. Box 2261 | Little Rock | AR | 72203 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

### WITNESSES' CONTACT INFORMATION

| Last Name | First Name | Middle Name | Suffix | Address | City | State | Postal Code |
|---|---|---|---|---|---|---|---|
| TUCKER | JIM | | | 1000 RICEBELT AVE | DEWITT | AR | 72042 |
| IRONS | JAMIE | | | P.O. BOX 98 | ST CHARLES | AR | 72140 |
| TUCKER | MATTHEW | | | 120 COURT SQUARE | DEWITT | AR | 72042 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

CRASH REPORT - ATTACHMENTS / PROPERTY DAMAGE / WITNESSES

**547681**

| Motor Vehicle # | ARKANSAS MOTOR VEHICLE CRASH REPORT | Page 3 of 11 |
|---|---|---|
| 1 | VEHICLE INFORMATION | Crash Report # 010920036 |

## DESCRIPTION AND IDENTIFICATION

| Check if this vehicle had no driver | **Hit and Run** | 000 | **Vehicle Body Type** | 109 |
|---|---|---|---|---|

Check if this vehicle had no driver ☐

**Hit and Run** — 000
- 000 No, did not leave the scene
- 001 No, vehicle & driver left the scene
- 002 No, only driver left the scene
- 100 Yes, vehicle & driver left the scene
- 101 Yes, only driver left the scene

**VIN** 1GYEC63868R202604

**Vehicle Year, Make, and Model**

| 2008 | Cadillac | Escalade EXT |
|---|---|---|
| Year | Make | Model |

**License Plate**
| AR | 846ZEA | 2021 | ☐ Missing |
|---|---|---|---|
| State | Number | Year | ☐ Unknown (fill in all known details) |

**Trailer #1 License Plate**
| | | ☐ Missing |
|---|---|---|
| State | Number | ☐ Unknown (fill in all known details) |

**Trailer #2 License Plate**
| | | ☐ Missing |
|---|---|---|
| State | Number | ☐ Unknown (fill in all known details) |

**Owner Name** ☐ Same as driver ☐ Unknown
TEKILLIA HAMMOND

**Owner Address** ☐ Same as driver ☐ Unknown
| 306 N SIXTH | WEST HELENA | AR | 72390-2525 |
|---|---|---|---|
| Street | City | State | Postal Code |

**Motor Carrier Type** — 000
- 000 Personal transportation
- 100 Interstate carrier
- 101 Intrastate carrier
- 102 Not in commerce - government
- 103 Not in commerce - other truck
- 999 Unknown

**Motor Carrier ID Numbers**
- USDOT # _____
- MC/MX # _____
- State # _____   State _____

**Motor Carrier Name** ☐ Unknown

**Motor Carrier Address** ☐ Unknown

| | City | State | Postal Code |
|---|---|---|---|
| Street | | | |

**Cargo Body Type** — 000
- 000 No cargo body
- 100 Bus
- 101 Van / enclosed box
- 102 Grain / chips / gravel
- 103 Pole trailer
- 104 Cargo tank
- 105 Log
- 106 Intermodal container chassis
- 107 Vehicle towing another vehicle
- 108 Flatbed
- 109 Dump
- 110 Concrete mixer
- 111 Auto transporter
- 112 Garbage / refuse
- 198 Other
- 999 Unknown

**Vehicle Body Type** — 109
**Passenger Vehicles**
- 100 2-door
- 101 4-door
- 102 Hatchback
- 103 Convertible
- 104 Station wagon
- 105 Pick-up
- 106 Mini-van
- 107 Passenger van (seats any number if personal; up to 8 if business)
- 108 Cargo van (10,000 lbs or less)
- 109 Sport utility vehicle
- 110 Large utility vehicle
- 111 Motor home/recreational vehicle
- 198 Other passenger vehicle

**Truck (> 10,000 lbs)**
- 200 Single unit truck (2 axles)
- 201 Single unit truck (3 or more axles)
- 202 Single unit truck with trailer
- 203 Truck tractor only (bobtail)
- 204 Tractor/semi-trailer
- 205 Tractor/doubles
- 206 Construction/maintenance equipment
- 207 Farm equipment
- 298 Other heavy vehicle (GVWR/GCWR > 10,000 lbs)

**Bus / Van / Limo (9 or more seats, including driver)**
- 300 School bus
- 301 Transit/city bus
- 302 Motor coach/intercity/cross-country bus
- 303 Limousine
- 304 Van (seats 9-15, including driver)
- 390 Other vehicle (seats 9-15, including driver)
- 391 Other vehicle (seats 16 or more, including driver)

**Cycle / Low Speed**
- 400 Motorcycle
- 401 Motor scooter
- 402 Moped
- 403 ATV (3, 4, or 6 wheels)
- 404 Snowmobile
- 405 Golf cart
- 406 Low speed vehicle
- 498 Other motorized cycle/low speed vehicle

**Unknown**
- 999 Unknown type of motor vehicle
- *If 198, 298, 390, 391, or 498, describe below:*

**GVWR/GCWR** — 970
- 100 10,000 lbs or less
- 101 10,001 - 26,000 lbs
- 102 More than 26,000 lbs
- 970 Not applicable

**Hazardous Materials Placard** — 000
- 000 Placard not required
- 100 Placard displayed
- 200 Placard required but not displayed
- 999 Unknown

**Hazardous Material ID**
*(4-digit # or name from middle of diamond or rectangular box)*

**Hazardous Material Class**
*(1-digit # from bottom of diamond)*

**Hazardous Materials Released from Vehicle Cargo Compartment** — 970
- 000 No, hazardous materials not released
- 100 Yes, hazardous materials released
- 970 Not applicable (not carrying hazardous materials)

## INSURANCE

**Insurance**
☐ Uninsured at time of crash   ☐ Unknown (fill in any known details)

**Insurance Company**
UNITED SECURITY HEALTH AND CASUALTY INSURANCE

**NAIC #**
81108

**Policy #**
18-04-0011823-00

## DAMAGE

**Damage Severity** — 102
- 000 No damage
- 100 Minor damage
- 101 Functional damage
- 102 Disabling damage
- 999 Unknown

**Damage Estimate**
$17,000

**Damage Prior to the Crash**
☑ No prior damage
☐ Yes (describe below)

**Initial Contact Point** (check 1)

|   | 7 | 8 | 9 | 10 | 11 |
|---|---|---|---|---|---|
| 6 | ☐ | ☐ | ☐ | ☐ | ☐ |
|   | ☐ | ☐ | ☐ | ☑12 | |
|   | 5 | 4 | 3 | 2 | 1 |

**Damaged Areas** (check all that apply)

|   | 7 | 8 | 9 | 10 | 11 |
|---|---|---|---|---|---|
| 6 | ☑ | ☑ | ☑ | ☑ | ☑ |
|   | ☑ | | | | ☑12 |
|   | ☑ | ☑ | ☑ | ☑ | ☑ |
|   | 5 | 4 | 3 | 2 | 1 |

☐ 000 Non-collision
☐ 100 Cargo loss
☐ 113 Top
☐ 114 Undercarriage
☐ 999 Unknown

☐ 097 No damage
☑ 113 Top
☑ 114 Undercarriage
☐ 999 Unknown

## TOWING

**Towed** — 101
- 000 Not towed
- 100 Towed, but not due to disabling damage
- 101 Towed due to disabling damage

**Towed By**
Capps Wrecker Service (South)

**Towed To**
| 1000 RICEBELT AVE | DEWITT | AR | 72042 |
|---|---|---|---|
| Street | City | State | Postal Code |

CRASH REPORT - MOTOR VEHICLE DESCRIPTION AND IDENTIFICATION

**547681**

| Motor Vehicle #<br>1 | **ARKANSAS MOTOR VEHICLE CRASH REPORT**<br>**VEHICLE INFORMATION** | Page 4 of 11<br>Crash Report # 010920036 |
|---|---|---|

## MOTOR VEHICLE CIRCUMSTANCES

**Vehicle Usage** — 000

000 No special function
100 Taxi
101 School bus/school transport
102 Church bus
103 Transit/commuter bus
104 Intercity bus
105 Charter/tour bus
106 Shuttle bus
107 Military
108 Police
109 Ambulance
110 Fire truck
111 Non-transport emergency services vehicle
112 Incident response
999 Unknown

**Emergency Vehicle Usage** — 970

100 Non-emergency, non-transport
101 Non-emergency transport
102 Emergency operation, emergency warning equipment not in use
103 Emergency operation, emergency warning equipment in use
970 Not applicable
999 Unknown

**Travel Direction** — 100

100 Northbound
101 Southbound
102 Eastbound
103 Westbound
104 Not on roadway
999 Unknown

**Vehicle Maneuver** — 100

100 Movement essentially straight ahead
101 Negotiating a curve
102 Backing
103 Changing lanes
104 Overtaking/passing
105 Turning right
106 Turning left
107 Making U-turn
108 Leaving traffic lane
109 Entering traffic lane
110 Slowing
111 Parked
112 Stopped in traffic
198 Other

999 Unknown

**Vehicle Defects**  *Check all that apply.*

☑ 000 None

☐ 100 Brake
☐ 103 Steering
☐ 106 Tires
☐ 109 Tail lights
☐ 112 Mirrors
☐ 115 Fuel system

☐ 101 Exhaust system
☐ 104 Power train
☐ 107 Wheels
☐ 110 Turn signals
☐ 113 Wipers
☐ 116 Cruise control

☐ 102 Body or doors
☐ 105 Suspension
☐ 108 Headlights
☐ 111 Windows or windshield
☐ 114 Truck coupling, trailer hitch, or safety chains

☐ 198 Other

☐ 999 Unknown

**Traffic Control Device Types and Statuses**

*Check the box next to each traffic control device that was present at the location of the crash. Use the codes to the right to record the status of each traffic control device present.*

100 Functioning properly
101 Functioning improperly
102 Inoperative or missing
999 Unknown

| **Traffic Control Device Type**<br>*Check all that apply.* | **Device Status**<br>*Use above codes.* |
|---|---|
| ☐ 000 None | |
| ☐ 100 Flashing traffic control signal | |
| ☐ 101 Traffic control signal | |
| ☐ 102 Stop sign | |
| ☐ 103 Yield sign | |
| ☐ 104 Slow or warning sign | |
| ☐ 105 Person (officer, flagman, crossing guard) | |
| ☐ 106 School zone sign/device | |
| ☐ 107 Pedestrian signal | |
| ☐ 108 No passing signal | |
| ☐ 109 Words or symbols painted on roadway | |
| ☑ 110 Traffic lanes marked | 100 |
| ☐ 111 Railway crossing with gate and signals | |
| ☐ 112 Railway crossing with flashing signals only | |
| ☐ 113 Railway crossing with crossbuck only | |
| ☐ 198 Other: | |
| ☐ 999 Unknown | |

**Trafficway Description** — 200

100 One-way trafficway
200 Two-way, not divided
201 Two-way, divided, with a continuous left turn lane
300 Two-way, divided, unprotected (painted >4 feet) median
400 Two-way, divided, positive cable barrier
401 Two-way, divided, positive concrete barrier
498 Two-way, divided, other type of positive barrier

999 Unknown

**Roadway Surface** — 101

100 Concrete
101 Asphalt
102 Gravel
103 Dirt
198 Other

999 Unknown

**Roadway Grade** — 100

100 Level    999 Unknown
101 Hillcrest
102 Uphill
103 Downhill
104 Sag (bottom)

**Roadway Alignment** — 100

100 Straight
200 Curve left
201 Curve right
299 Curve, direction unknown
999 Unknown

**Total # of Lanes** — 2

**Posted Speed Limit** — 45
*Use the posted speed limit that applied to this vehicle at the time of the crash*

## MOTOR VEHICLE EVENTS

**Sequence of Events**  1 [107]  2 [313]  3 [100]  4 [ ]  5 [ ]  6 [ ]  7 [ ]  8 [ ]  9 [ ]  10 [ ]

**Most Harmful Event**  [100]

| **Non-Collision** | **Collision with Non-Fixed Object** | **Collision with Fixed Object** | **Unknown** |
|---|---|---|---|
| 100 Overturn/rollover | 200 Pedestrian | 300 Impact attenuator/crash cushion  318 Fence | 999 Unknown |
| 101 Fire/explosion | 201 Pedalcycle | 301 Bridge overhead structure  319 Mailbox | |
| 102 Immersion, full or partial | 202 Other non-motorist | 302 Bridge pier or support  320 Building | |
| 103 Jackknife | 203 Railway vehicle (train, engine) | 303 Bridge rail  398 Other fixed object | |
| 104 Cargo/equipment loss or shift | 204 Animal (live) | 304 Cable barrier | |
| 105 Equipment failure | 205 Motor vehicle in transport | 305 Culvert | *If 198, 298, or 398 is used, describe below:* |
| (blown tire, brake failure, etc.) | 206 Parked motor vehicle | 306 Curb | |
| 106 Separation of units | 207 Falling/shifting cargo or | 307 Ditch | |
| 107 Ran off roadway right | anything set in motion by motor vehicle | 308 Embankment | |
| 108 Ran off roadway left | 208 Work zone/maintenance equipment | 309 Guardrail face | |
| 109 Deliberately crossed median | 298 Other non-fixed object | 310 Guardrail end | |
| 110 Unintentionally crossed median | | 311 Concrete traffic barrier | |
| 111 Crossed centerline | | 312 Other traffic barrier | |
| 112 Downhill runaway | | 313 Tree (standing) | |
| 113 Fell/jumped from motor vehicle | | 314 Utility pole/light support | |
| 114 Reentering roadway | | 315 Traffic sign support | |
| 115 Object thrown or fallen on or near motor vehicle | | 316 Traffic signal support | |
| 198 Other non-collision | | 317 Other post, pole, or support | |

CRASH REPORT - MOTOR VEHICLE CIRCUMSTANCES AND EVENTS

547681

| Motor Vehicle #<br>1 | ARKANSAS MOTOR VEHICLE CRASH REPORT<br>DRIVER INFORMATION | Page **5** of **11**<br>Crash Report # 010920036 |

## DRIVER INFORMATION

| Name ☐ Unknown | | | Date of Birth/Age | Sex ☑ Male | Race | 101 |
|---|---|---|---|---|---|---|
| Otey | Carlton | Deshun | ☐ Female<br>Age: 28 | 100 White/Caucasian | |
| Last | First | Middle | Suffix | | ☐ Unknown | 101 Black/African-American |

Sex: ☑ Male ☐ Female ☐ Unknown

Race:
101
100 White/Caucasian
101 Black/African-American
102 Hispanic
103 Asian/Pacific Islander
104 American Indian
198 Other
999 Unknown

| Address ☐ Unknown | | | | |
|---|---|---|---|---|
| 1039 Arkansas | Helena | AR | 72342 | |
| Street | City | State | Postal Code | |

## DRIVER LICENSE INFORMATION

**License Status** | 200
000 Not licensed
100 Valid license
200 Suspended
201 Revoked
202 Expired
203 Cancelled or denied
204 Disqualified
999 Unknown

**License Number**
928946830

**License State**
AR

**License Class**
D

**Is Commercial Driver License?**
☐ Yes   ☑ No

**Restrictions on License** *Check all that apply.*
☑ 000 None
☐ 100 With licensed adult
☐ 101 Corrective lenses
☐ 102 Mechanical aid
☐ 103 Prosthetic aid
☐ 104 Automatic transmission
☐ 105 Outside mirror
☐ 106 Daylight only
☐ 107 Class B or C with passengers and class D
☐ 108 Class C only with passengers
☐ 109 Vehicles without airbags
☐ 110 Interlock device
☐ 111 School, church, or transit bus
☐ 112 Class D only with passengers
☐ 113 Diesel fuel, fertilizer only
☐ 114 Seasonal farm service vehicle
☐ 198 Other (describe below)

**Restrictions Violated** *Check all that apply.*
☑ 000 None
☐ 100 With licensed adult
☐ 101 Corrective lenses
☐ 102 Mechanical aid
☐ 103 Prosthetic aid
☐ 104 Automatic transmission
☐ 105 Outside mirror
☐ 106 Daylight only
☐ 107 Class B or C with passengers and class D
☐ 108 Class C only with passengers
☐ 109 Vehicles without airbags
☐ 110 Interlock device
☐ 111 School, church, or transit bus
☐ 112 Class D only with passengers
☐ 113 Diesel fuel, fertilizer only
☐ 114 Seasonal farm service vehicle
☐ 198 Other (describe below)

**Endorsements on License** *Check all that apply.*
☑ 000 None
☐ 100 Double/triple trailers
☐ 101 Passenger
☐ 102 Tank vehicle
☐ 103 Hazardous materials
☐ 104 Tank vehicle & hazardous materials
☐ 105 School
☐ 106 Motorcycle
☐ 107 Motor driven cycle
☐ 108 Valid without photo
☐ 198 Other (describe below)

**Endorsements Violated** *Check all that apply.*
☑ 000 None
☐ 100 Double/triple trailers
☐ 101 Passenger
☐ 102 Tank vehicle
☐ 103 Hazardous materials
☐ 104 Tank vehicle & hazardous materials
☐ 105 School
☐ 106 Motorcycle
☐ 107 Motor driven cycle
☐ 108 Valid without photo
☐ 198 Other (describe below)

## DRIVER SEATING AND SAFETY INFORMATION

**Seating Position** | 110

**Standard Vehicle Seats**

| | Front | | | |
|---|---|---|---|---|
| Row | Left | Middle | Right | Other |
| 1 | 110 | 120 | 130 | 180 |
| 2 | 210 | 220 | 230 | 280 |
| 3 | 310 | 320 | 330 | 380 |
| 4 | 410 | 420 | 430 | 480 |
| 5 | 510 | 520 | 530 | 580 |

**Other Seating Positions**
800 Sleeper section of cab (truck)
801 Passenger section of bus
802 Enclosed passenger/cargo area
803 Unenclosed passenger/cargo area
804 Passenger/cargo area,
    unknown if enclosed
805 Trailing unit
806 Riding on motor vehicle exterior

**Unknown**
999 Unknown

**Bus Seating Position**

*(Complete if 801 was selected for Seating Position above.)*

| | Front | | | | | |
|---|---|---|---|---|---|---|
| | **Driver** | | | | | |
| 1A | 1B | 1C | | 1D | 1E | 1F |
| 2A | 2B | 2C | | 2D | 2E | 2F |
| 3A | 3B | 3C | Aisle | 3D | 3E | 3F |
| 4A | 4B | 4C | | 4D | 4E | 4F |
| 5A | 5B | 5C | | 5D | 5E | 5F |
| ⋮ | ⋮ | ⋮ | | ⋮ | ⋮ | ⋮ |
| ##A | ##B | ##C | | ##D | ##E | ##F |

**Restraint Systems Used** | 100
000 None used - motor vehicle occupant
100 Shoulder and lap belt used
101 Shoulder belt only used
102 Lap belt only used
103 Restraint used - type unknown
104 Child restraint system - forward facing
105 Child restraint system - rear facing
106 Booster seat
107 Child restraint - type unknown
198 Other
970 Not applicable
999 Unknown

**Air Bags Deployed**
*Check all that apply.*
☐ 000 Not deployed
☑ 100 Deployed: front
☐ 101 Deployed: side
☑ 102 Deployed: curtain
☐ 198 Deployed: other
☐ 970 Not applicable
☐ 999 Unknown

**Motorcycle Helmet Usage** | 000
000 No helmet worn
100 DOT-compliant
    motorcycle helmet worn
101 Non-DOT-compliant
    motorcycle helmet worn
102 Helmet worn,
    unknown if DOT-compliant
999 Unknown if helmet worn

**Eye Protection Usage**
☐ Yes
☑ No
☐ Unknown

**Ejection** | 000
000 Not ejected
100 Ejected, partially
101 Ejected, totally
970 Not applicable
999 Unknown

**Ejection Path** | 000
000 Not ejected
100 Side door opening
101 Side window
102 Windshield
103 Back window
104 Back door/tailgate opening
105 Roof opening (sun roof,
    convertible top down)
106 Roof (convertible top up)
198 Other (e.g., back of pickup truck,
    torn-off roof, car cut in half)
970 Not applicable
999 Unknown

**Extrication** | 000
000 Not extricated
100 Extricated
999 Unknown

CRASH REPORT - DRIVER INFORMATION

**547681**

| Motor Vehicle # | ARKANSAS MOTOR VEHICLE CRASH REPORT | Page **6** of **11** |
|---|---|---|
| 1 | DRIVER INFORMATION | Crash Report # 010920036 |

## MEDICAL INFORMATION

| Injury Status | **2** | Type of Medical Transportation | **101** | EMS Notified | | EMS Arrived | |
|---|---|---|---|---|---|---|---|
| 1 (K) Fatal injury | | 000 Not transported | | 09/18/2020 | 07:40 AM | 09/18/2020 | 07:57 AM |
| 2 (A) Suspected serious injury | | 100 EMS air | | *Date* | *Time* | *Date* | *Time* |
| 3 (B) Suspected minor injury | | 101 EMS ground | | **Transported to Medical Facility By** | | | |
| 4 (C) Possible injury | | 102 Law enforcement | | DeWitt EMS | | | |
| 5 (O) No apparent injury | | 198 Other | | | | | |
| **Trauma Band #** | | | | **Medical Facility Transported To** | | | |
| B126959 | | 199 Transported but method unknown | | DeWitt Hospital, De Witt, AR | | | |
| | | 999 Unknown if transported | | | | | |

## DRIVER CONDITION AND CIRCUMSTANCES

| Condition at Time of Crash *Check all that apply:* | Driver Distracted By | **000** | Driver Vision Obscured By | | **000** |
|---|---|---|---|---|---|
| ☑ 000 Apparently normal | 000 Not distracted | | 000 No obstruction noted | 106 Not in-transport motor vehicle | |
| ☐ 100 Physically impaired | 100 Manually operating an electronic | | 100 Rain, snow, fog, smoke, sand, or dust | (parked, working) | |
| ☐ 101 Emotional (depressed, angry, disturbed, etc.) | communication device (texting, typing, dialing) | | 101 Reflected glare, bright sunlight, | 107 Splash or spray of passing vehicle | |
| ☐ 102 III (sick) or fainted | 101 Talking on hands-free electronic device | | or headlights | 108 Inadequate defrost or defog system | |
| ☐ 103 Asleep or fatigued | 102 Talking on hand-held electronic device | | 102 Curve, hill, or other roadway | 109 Inadequate vehicle lighting system | |
| ☐ 104 Under the influence of medication or drugs | 103 Other activity with an electronic device | | design feature | 110 Obstruction interior to the vehicle | |
| ☐ 105 Under the influence of alcohol | 104 Passenger | | 103 Building, billboard, or other structure | 111 External mirrors | |
| ☐ 198 Other | 980 Other distraction inside the vehicle | | 104 Trees, crops, or vegetation | 112 Broken or improperly cleaned windshield | |
| | 981 Other distraction outside the vehicle | | 105 In-transport motor vehicle | 113 Obstructing angles on vehicle | |
| | 999 Unknown if distracted | | (including load) | 199 Vision obscured - no details | |
| ☐ 999 Unknown | *If 980 or 981, describe below:* | | 980 Other visual obstruction (describe below) | | |

| Driver Suspected of Alcohol Usage | Alcohol Test Type Given | **100** | Alcohol Test Result Status | **100** | Blood Alcohol Content | Speeding Related | **101** |
|---|---|---|---|---|---|---|---|
| | 000 No test given | | 100 Results pending | | | 000 Not speeding | |
| | 001 Test refused | | 101 Results received | | | 100 Racing | |
| ☐ Yes | 100 Blood test | | 970 Not applicable | | | 101 Exceeded speed limit | |
| | 101 Breath test | | 999 Unknown | | | 102 Too fast for conditions | |
| ☐ No | 102 Urine test | | | | | 999 Unknown | |
| | 198 Other type of test | | | | | | |
| ☑ Unknown | | | | | ☐ Result received from Crime Lab | | |
| | 999 Unknown if tested | | | | | | |

| Driver Suspected of Drug Usage | Drug Test Type Given | **101** | Drug Test Results ☐ Result received from Crime Lab | | Citations | |
|---|---|---|---|---|---|---|
| | 000 No test given | | **Pending/Negative** | **Not Applicable/Unknown** | Citation # | Charges |
| ☐ Yes | 001 Test refused | | ☐ 000 Results negative | ☐ 970 Not applicable | | |
| | 100 Blood test | | ☑ 100 Results pending | ☐ 999 Unknown | | |
| ☐ No | 101 Urine test | | | | | |
| | 102 Both blood and urine tests | | **Positive Results** *(check all that apply)* | | | |
| ☑ Unknown | 198 Other type of test | | ☐ 200 Amphetamines | ☐ 206 Methamphetamines | | |
| | | | ☐ 201 Barbiturates | ☐ 207 Opiates | | |
| | 999 Unknown if tested | | ☐ 202 Benzodiazepines | ☐ 208 Oxycodone | | |
| | | | ☐ 203 Cannabinoids | ☐ 209 Propoxyphene | | |
| | | | ☐ 204 Cocaine | ☐ 210 Phencyclidine (PCP) | | |
| | | | ☐ 205 Methadone | | | |
| | | | ☐ 298 Other positive result (describe below) | | | |

## DRIVER ACTIONS AT TIME OF CRASH

*Check all that apply:*

☐ 000 No contributing action          ☐ 999 Unknown

| Disregarded Traffic Signs or Controls | Improper Maneuver | Other Actions |
|---|---|---|
| ☐ 100 Disregarded red light | ☐ 300 Improper right turn | ☐ 600 Impeding traffic |
| ☐ 101 Disregarded other traffic signal | ☐ 301 Improper left turn | ☑ 601 Ran off roadway |
| ☐ 102 Disregarded stop sign | ☐ 302 Improper U-turn | ☐ 602 Crowded off roadway |
| ☐ 103 Disregarded yield sign | ☐ 303 Improper backing | ☐ 603 Crossing median |
| ☐ 104 Disregarded other traffic sign | ☐ 304 Improper passing | ☐ 604 Failed to yield right-of-way |
| ☐ 105 Disregarded other road markings | ☐ 305 Improper lane change | ☐ 605 Failed to keep in proper lane |
| ☐ 106 Disregarded officer or flagman | ☐ 306 Improperly parked | ☐ 606 Wrong side of road |
| **Swerved or Avoided** | **Improper Use of Lights or Signals** | ☐ 607 Wrong way |
| ☐ 200 Swerved or avoided due to wind | ☐ 400 Driving without lights | ☐ 608 Followed too closely |
| ☐ 201 Swerved or avoided due to slippery surface | ☐ 401 Failed to dim headlights | ☐ 609 Cutting in |
| ☐ 202 Swerved or avoided due to motor vehicle | ☐ 402 Failed to or improper signal | ☐ 610 Over-correcting or over-steering |
| ☐ 203 Swerved or avoided due to non-motorist in roadway | **Unsafe Operation** | ☐ 980 Other contributing action (describe below) |
| ☑ 204 Swerved or avoided due to object in roadway | ☐ 500 Reckless operation | |
| ☐ 205 Swerved or avoided due to animal in roadway | ☐ 501 Aggressive operation | |
| | ☐ 502 Inattentive, careless, negligent, or erratic operation | |
| | ☐ 503 Under the influence of alcohol | |
| | ☐ 504 Under the influence of drugs | |

CRASH REPORT - DRIVER CONDITION AND CIRCUMSTANCES

**547681**

| Total # of Passengers: 4 | **ARKANSAS MOTOR VEHICLE CRASH REPORT** | Page **7** of **11** |
|---|---|---|
| | **PASSENGER INFORMATION** Complete this sheet for passengers in each motor vehicle. | Crash Report # 010920036 |

## PASSENGER INFORMATION

**MOTOR VEHICLE #** 1            **PASSENGER #** 1

| Name | | | | Date of Birth/Age | Sex ☑ Male | Air Bags Deployed |
|---|---|---|---|---|---|---|
| TILSON | JEREMY | LAMAAR | | | ☐ Female | check all that apply: |
| Last | First | Middle | Suffix | Age: 29 | ☐ Unknown | ☐ 000 Not deployed |

| Address | | | | | Race | ☑ 100 Deployed: front |
|---|---|---|---|---|---|---|
| 2021 W SHORT 17TH ST | | NORTH LITTLE | AR | 72114 | 101 | ☑ 101 Deployed: side |
| Street | | City | State | Postal Code | | ☑ 102 Deployed: curtain |

| Injury Status | Seating Position | Ejection | Ejection Path | Extrication | Restraint Systems | Helmet Used |
|---|---|---|---|---|---|---|
| 1 | 320 | 101 | 103 | 000 | 000 | 000 |

| Type of Medical Transportation | EMS Notified | | Transported To Medical Facility By | Eye Protection |
|---|---|---|---|---|
| | | | | 000 |
| 000 | Date (MM/DD/YYYY) | Time (HH:MM AM/PM) | | Trauma Band # |
| | EMS Arrived | | Medical Facility Transported To | |
| | Date (MM/DD/YYYY) | Time (HH:MM AM/PM) | | |

☐ 198 Deployed: other
☐ 970 Not applicable
☐ 999 Unknown
*If 198 is checked, describe below*

**MOTOR VEHICLE #** 1            **PASSENGER #** 2

| Name | | | | Date of Birth/Age | Sex ☑ Male | Air Bags Deployed |
|---|---|---|---|---|---|---|
| HUNTER | LECEEDRIC | MONTRA | | | ☐ Female | check all that apply: |
| Last | First | Middle | Suffix | Age: 24 | ☐ Unknown | ☐ 000 Not deployed |

| Address | | | | | Race | ☑ 100 Deployed: front |
|---|---|---|---|---|---|---|
| 248 N COANZA | | WEST HELENA | AR | 72390 | 101 | ☑ 101 Deployed: side |
| Street | | City | State | Postal Code | | ☑ 102 Deployed: curtain |

| Injury Status | Seating Position | Ejection | Ejection Path | Extrication | Restraint Systems | Helmet Used |
|---|---|---|---|---|---|---|
| 3 | 210 | 000 | 000 | 000 | 100 | 000 |

| Type of Medical Transportation | EMS Notified | | Transported To Medical Facility By | Eye Protection |
|---|---|---|---|---|
| | | | DeWitt EMS | 000 |
| 101 | Date (MM/DD/YYYY) | Time (HH:MM AM/PM) | | Trauma Band # |
| | EMS Arrived | | Medical Facility Transported To | N/A |
| | Date (MM/DD/YYYY) | Time (HH:MM AM/PM) | DeWitt Hospital, De Witt, AR | |

☐ 198 Deployed: other
☐ 970 Not applicable
☐ 999 Unknown
*If 198 is checked, describe below*

**MOTOR VEHICLE #** 1            **PASSENGER #** 3

| Name | | | | Date of Birth/Age | Sex ☑ Male | Air Bags Deployed |
|---|---|---|---|---|---|---|
| MILLER | DEONTA | SHAVEZ | | | ☐ Female | check all that apply: |
| Last | First | Middle | Suffix | Age: 23 | ☐ Unknown | ☐ 000 Not deployed |

| Address | | | | | Race | ☑ 100 Deployed: front |
|---|---|---|---|---|---|---|
| 401 W CLEBURNE | | WEST HELENA | AR | 72390 | 101 | ☑ 101 Deployed: side |
| Street | | City | State | Postal Code | | ☑ 102 Deployed: curtain |

| Injury Status | Seating Position | Ejection | Ejection Path | Extrication | Restraint Systems | Helmet Used |
|---|---|---|---|---|---|---|
| 3 | 230 | 000 | 000 | 000 | 100 | 000 |

| Type of Medical Transportation | EMS Notified | | Transported To Medical Facility By | Eye Protection |
|---|---|---|---|---|
| | | | DeWitt EMS | 000 |
| 101 | Date (MM/DD/YYYY) | Time (HH:MM AM/PM) | | Trauma Band # |
| | EMS Arrived | | Medical Facility Transported To | B1269Z0 |
| | Date (MM/DD/YYYY) | Time (HH:MM AM/PM) | DeWitt Hospital, De Witt, AR | |

☐ 198 Deployed: other
☐ 970 Not applicable
☐ 999 Unknown
*If 198 is checked, describe below*

## PASSENGER CODES

| Injury Status | Ejection | Ejection Path | Restraint Systems Used | Vehicle Seating Position |
|---|---|---|---|---|
| 1 (K) Fatal injury | 000 Not ejected | 000 Not ejected | 000 None used - motor vehicle occupant | |
| 2 (A) Suspected serious injury | 100 Ejected, partially | 100 Side door opening | 100 Shoulder and lap belt used | |
| 3 (B) Suspected minor injury | 101 Ejected, totally | 101 Side window | 101 Shoulder belt only used | |
| 4 (C) Possible injury | 970 Not applicable | 102 Windshield | 102 Lap belt only used | |
| 5 (O) No apparent injury | 999 Unknown | 103 Back window | 103 Restraint used - type unknown | |

**Vehicle Seating Position**

| | Front | | | |
|---|---|---|---|---|
| Row | Left | Middle | Right | Other |
| 1 | 110 | 120 | 130 | 180 |
| 2 | 210 | 220 | 230 | 280 |
| 3 | 310 | 320 | 330 | 380 |
| 4 | 410 | 420 | 430 | 480 |
| 5 | 510 | 520 | 530 | 580 |

800 Sleeper section of cab (truck)
801 Passenger section of bus
802 Enclosed passenger/cargo area
803 Unenclosed passenger/cargo area
804 Passenger/cargo area, unknown if enclosed
805 Trailing unit
806 Riding on motor vehicle exterior
999 Unknown

**Bus Seating Position (use if 801 is selected)**

| | Front | | |
|---|---|---|---|
| | Driver | | |
| 1A | 1B | 1C | |
| 2A | 2B | 2C | |
| 3A | 3B | 3C | |
| ⋮ | ⋮ | ⋮ | Aisle |
| ##A | ##B | ##C | |

| 1D | 1E | 1F |
|---|---|---|
| 2D | 2E | 2F |
| 3D | 3E | 3F |
| ⋮ | ⋮ | ⋮ |
| ##D | ##E | ##F |

**Race**
100 White/Caucasian
101 Black/African-American
102 Hispanic
103 Asian/Pacific Islander
104 American Indian
198 Other
999 Unknown

**Extrication**
000 Not extricated
100 Extricated
999 Unknown

104 Child restraint system - forward facing
105 Child restraint system - rear facing
106 Booster seat
107 Child restraint - type unknown
198 Other
970 Not applicable
999 Unknown

**Ejection Path (continued)**
104 Back door/tailgate opening
105 Roof opening (sun roof, convertible top down)
106 Roof (convertible top up)
198 Other (e.g., back of pickup truck, torn-off roof, car cut in half)
970 Not applicable
999 Unknown

| Type of Medical Transportation | Motorcycle Helmet Used | Eye Protection Used |
|---|---|---|
| 000 Not transported | 000 No helmet worn | 000 No |
| 100 EMS air | 100 DOT-compliant motorcycle helmet worn | 100 Yes |
| 101 EMS ground | 101 Non-DOT-compliant motorcycle helmet worn | 999 Unknown |
| 102 Law enforcement | 102 Helmet worn, unknown if DOT-compliant | |
| 198 Other | 999 Unknown if helmet worn | |
| 199 Transported, but method unknown | | |
| 999 Unknown if transported | | |

**CRASH REPORT - PASSENGER INFORMATION**

**547681**

| Total # of Passengers | ARKANSAS MOTOR VEHICLE CRASH REPORT | Page | 8 | of | 11 |
|---|---|---|---|---|---|
| 4 | **PASSENGER INFORMATION** | | | | |

Crash Report # 010920036

Complete this sheet for passengers in each motor vehicle.

## PASSENGER INFORMATION

**MOTOR VEHICLE #** 1      **PASSENGER #** 4

| Name | | | | | | Date of Birth/Age | Sex ☑ Male | Air Bags Deployed |
|---|---|---|---|---|---|---|---|---|
| BEDFORD | DELANE | | DEVON | | | | ☐ Female | check all that apply: |
| Last | First | | Middle | | Suffix | Age: 25 | ☐ Unknown | ☐ 000 Not deployed |

| Address | | | | | Race | ☑ 100 Deployed: front |
|---|---|---|---|---|---|---|
| 442 N VILLAGE DR | | WEST HELENA | AR | 72390 | | ☑ 101 Deployed: side |
| Street | | City | State | Postal Code | 101 | ☑ 102 Deployed: curtain |

| Injury Status | Seating Position | Ejection | Ejection Path | Extrication | Restraint Systems | Helmet Used | ☐ 198 Deployed: other |
|---|---|---|---|---|---|---|---|
| 3 | 130 | 000 | 000 | 000 | 100 | 000 | ☐ 970 Not applicable |

| Type of Medical Transportation | EMS Notified | | Transported To Medical Facility By | Eye Protection | ☐ 999 Unknown |
|---|---|---|---|---|---|
| | | | DeWitt EMS | 000 | If 198 is checked, describe below |
| 101 | Date (MM/DD/YYYY) | Time (HH:MM AM/PM) | | Trauma Band # | |
| | EMS Arrived | | Medical Facility Transported To | B126911 | |
| | | | DeWitt Hospital, De Witt, AR | | |
| | Date (MM/DD/YYYY) | Time (HH:MM AM/PM) | | | |

**MOTOR VEHICLE #**      **PASSENGER #**

| Name | | | | | | Date of Birth/Age | Sex ☐ Male | Air Bag Deployed |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | ☐ Female | Check all that apply: |
| Last | First | | Middle | | Suffix | | ☐ Unknown | ☐ 000 Not deployed |

| Address | | | | | Race | ☐ 100 Deployed: front |
|---|---|---|---|---|---|---|
| | | | | | | ☐ 101 Deployed: side |
| Street | | City | State | Postal Code | | ☐ 102 Deployed: curtain |

| Injury Status | Seating Position | Ejection | Ejection Path | Extrication | Restraint Systems | Helmet Used | ☐ 198 Deployed: other |
|---|---|---|---|---|---|---|---|
| | | | | | | | ☐ 970 Not applicable |

| Type of Medical Transportation | EMS Notified | Transported To Medical Facility By | Eye Protection | ☐ 999 Unknown |
|---|---|---|---|---|
| | | | | If 198 is checked, describe below |
| | Date (MM/DD/YYYY) | Time (HH:MM AM/PM) | Trauma Band # | |
| | EMS Arrived | Medical Facility Transported To | | |
| | Date (MM/DD/YYYY) | Time (HH:MM AM/PM) | | |

**MOTOR VEHICLE #**      **PASSENGER #**

| Name | | | | | | Date of Birth/Age | Sex ☐ Male | Air Bag Deployed |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | ☐ Female | Check all that apply: |
| Last | First | | Middle | | Suffix | | ☐ Unknown | ☐ 000 Not deployed |

| Address | | | | | Race | ☐ 100 Deployed: front |
|---|---|---|---|---|---|---|
| | | | | | | ☐ 101 Deployed: side |
| Street | | City | State | Postal Code | | ☐ 102 Deployed: curtain |

| Injury Status | Seating Position | Ejection | Ejection Path | Extrication | Restraint Systems | Helmet Used | ☐ 198 Deployed: other |
|---|---|---|---|---|---|---|---|
| | | | | | | | ☐ 970 Not applicable |

| Type of Medical Transportation | EMS Notified | Transported To Medical Facility By | Eye Protection | ☐ 999 Unknown |
|---|---|---|---|---|
| | | | | If 198 is checked, describe below |
| | Date (MM/DD/YYYY) | Time (HH:MM AM/PM) | Trauma Band # | |
| | EMS Arrived | Medical Facility Transported To | | |
| | Date (MM/DD/YYYY) | Time (HH:MM AM/PM) | | |

## PASSENGER CODES

| Injury Status | Ejection | Ejection Path | Restraint Systems Used | Vehicle Seating Position |
|---|---|---|---|---|
| 1 (K) Fatal Injury | 000 Not ejected | 000 Not ejected | 000 None used - motor vehicle occupant | |
| 2 (A) Suspected serious injury | 100 Ejected, partially | 100 Side door opening | 100 Shoulder and lap belt used | 800 Sleeper section of cab (truck) |
| 3 (B) Suspected minor injury | 101 Ejected, totally | 101 Side window | 101 Shoulder belt only used | 801 Passenger section of bus |
| 4 (C) Possible Injury | 970 Not applicable | 102 Windshield | 102 Lap belt only used | 802 Enclosed passenger/cargo area |
| 5 (O) No apparent injury | 999 Unknown | 103 Back window | 103 Restraint used - type unknown | 803 Unenclosed passenger/cargo area |
| | | 104 Back door/tailgate opening | 104 Child restraint system - forward facing | 804 Passenger/cargo area, |
| | | 105 Roof opening | 105 Child restraint system - rear facing | unknown if enclosed |
| | | (sun roof, convertible top down) | 106 Booster seat | 805 Trailing unit |
| | | 106 Roof (convertible top up) | 107 Child restraint - type unknown | 806 Riding on motor vehicle exterior |
| | | 198 Other (e.g., back of pickup truck, | 198 Other | 999 Unknown |
| | | tom-off roof, car cut in half) | 970 Not applicable | |
| | | 970 Not applicable | 999 Unknown | |
| | | 999 Unknown | | |

| Race | | Extrication |
|---|---|---|
| 100 White/Caucasian | | 000 Not extricated |
| 101 Black/African-American | | 100 Extricated |
| 102 Hispanic | | 999 Unknown |
| 103 Asian/Pacific Islander | | |
| 104 American Indian | | |
| 198 Other | | |
| 999 Unknown | | |

**Vehicle Seating Position**

| | Front | | | |
|---|---|---|---|---|
| Row | Left | Middle | Right | Other |
| 1 | 110 | 120 | 130 | 180 |
| 2 | 210 | 220 | 230 | 280 |
| 3 | 310 | 320 | 330 | 380 |
| 4 | 410 | 420 | 430 | 480 |
| 5 | 510 | 520 | 530 | 580 |

Bus Seating Position (use if 801 is selected)

| Front | | | | | | |
|---|---|---|---|---|---|---|
| | Driver | | | | | |
| 1A | 1B | 1C | | 1D | 1E | 1F |
| 2A | 2B | 2C | | 2D | 2E | 2F |
| 3A | 3B | 3C | Aisle | 3D | 3E | 3F |
| ⋮ | ⋮ | ⋮ | | ⋮ | ⋮ | ⋮ |
| ##A | ##B | ##C | | ##D | ##E | ##F |

| Type of Medical Transportation | Motorcycle Helmet Used | Eye Protection Used |
|---|---|---|
| 000 Not transported | 000 No helmet worn | 000 No |
| 100 EMS air | 100 DOT-compliant motorcycle helmet worn | 100 Yes |
| 101 EMS ground | 101 Non-DOT-compliant motorcycle helmet worn | 999 Unknown |
| 102 Law enforcement | 102 Helmet worn, unknown if DOT-compliant | |
| 198 Other | 999 Unknown if helmet worn | |
| 199 Transported, but method unknown | | |
| 999 Unknown if transported | | |

CRASH REPORT – PASSENGER INFORMATION

**547681**

## ARKANSAS MOTOR VEHICLE CRASH REPORT
## NARRATIVE

Crash Report #  010920036

SEQUENCE OF EVENTS: VEHICLE 1 WAS TRAVELING NORTH ON STATE HIGHWAY 1 IN ST. CHARLES ACTIVELY FLEEING FROM AN ARKANSAS COUNTY DEPUTY, WITNESS #1.  THE ST. CHARLES POLICE CHIEF, WITNESS #2, WAS PARKED ON THE NORTHBOUND SHOULDER OF STATE HIGHWAY 1 ATTEMPTING TO DEPLOY A TIRE DEFLATION DEVICE TO SAFELY END THE PURSUIT.  THE OPERATOR OF VEHICLE #1 SWERVED INTO THE SOUTHBOUND LANE OF TRAFFIC ATTEMPTING TO AVOID THE TIRE DEFLATION DEVICE.  AFTER DRIVING AROUND THE TIRE DEFLATION DEVICE THE OPERATOR OF VEHICLE 1 OVERSTEERED WHILE SWERVING BACK INTO THE NORTHBOUND LANE OF TRAFFIC. THIS CAUSED VEHICLE 1 TO BEGIN TO YAW IN A CLOCKWISE DIRECTION, LEAVING YAW MARKS WHILE TRAVELING ACROSS THE NORTHBOUND LANE OF TRAFFIC AND LEAVING THE ROADWAY AT THE NORTHBOUND FOG LINE. THE VEHICLE STRUCK 2 ROAD SIGNS AND WENT AIRBORNE.

AFTER LEAVING THE ROADWAY VEHICLE 1 TRAVELED THROUGH THE GRASSY ROADSIDE WHERE IT STRUCK A ROAD SIGN BEFORE THE FRONT END STRUCK A TREE.  THE VEHICLE CONTINUED TRAVELING NORTHEAST ON THE ROADSIDE STRIKING ANOTHER ROAD SIGN.  VEHICLE 1 THEN TRAVELED OVER SOME BRUSH AND SEVERAL SMALL TREES CAUSING IT TO GO AIRBORNE.  WHILE AIRBORNE VEHICLE 1 STARTED TO OVERTURN, EJECTING THE THIRD ROW PASSENGER.  VEHICLE 1 CONTINUED TO OVERTURN AND CAME TO FINAL REST ON ITS DRIVER'S SIDE FACING EAST IN SOME BRUSH ALONG A POWER LINE RIGHT OF WAY EAST OF STATE HIGHWAY 1.

CONCLUSION:  AFTER INVESTIGATING THIS CRASH PHYSICAL EVIDENCE AND STATEMENTS FROM THE DRIVER AND WITNESSES SHOW THAT THE DRIVER OF VEHICLE 1 WAS ACTIVELY FLEEING FROM AN ARKANSAS COUNTY DEPUTY AND ATTEMPTED TO AVOID A TIRE DEFLATION DEVICE DURING THE PURSUIT.  THE ACTIONS TAKEN BY THE DRIVER CAUSED VEHICLE 1 TO EXIT THE ROADWAY, STRIKE TWO SIGNS, A TREE, AND SEVERAL SMALL TREES AND BRUSH.  THE VEHICLE WENT AIRBORNE AND OVERTURNED, CAUSING THE THIRD ROW PASSENGER TO BE EJECTED.  INJURIES SUSTAINED BY THE THIRD ROW PASSENGER RESULTED IN HIS DEATH.

NOTE:  THE ARKANSAS STATE POLICE RECONSTRUCTION TEAM WAS CONTACTED TO ASSIST IN OBTAINING DATA FROM VEHICLE 1 AT THE TIME OF COLLISION.  A SEARCH WARRANT WAS OBTAINED TO ATTEMPTO TO COLLECT DATA FROM THE VEHICLE'S AIRBAG CONTROL MODULE (ACM).  ON SEPTEMBER 24, 2020, SERGEANT GREG DYCUS AND CORPORAL JASON DOOLEY WITH THE ARKANSAS STATE POLICE RECONSTRUCTION TEAM, AND TROOPER TERRELL PRATT, EXECUTED THE SEARCH WARRANT AND WERE ABLE TO OBTAIN AN IMAGE FROM THE ACM.  AT THIS TIME THE RESULTS OF THAT IMAGE ARE NOT AVAILABLE.  THE ANALYSIS REPORT FROM SERGEANT GREG DYCUS WILL BE ADDED TO THIS REPORT AS A SUPPLEMENT ONCE COMPLETED.

OCCUPANT RELATED INFORMATION:  THERE WAS A TOTAL OF FIVE OCCUPANTS IN THE VEHICLE AT THE TIME OF THE CRASH. THE DRIVER AND THREE PASSENGERS WERE TRANSPORTED TO DEWITT HOSPITAL WHERE THEY WERE TREATED FOR MINOR INJURIES AND RELEASED. THE THIRD ROW PASSENGER, PASSENGER 1, WAS EJECTED FROM THE BACK WINDOW OF THE VEHICLE AND SUSTAINED FATAL INJURIES. PASSENGER 1 WAS PRONOUNCED DECEASED AT THE SCENE BY ARKANSAS COUNTY CORONER COOPER ESSEX AT 8:35 AM. THE BODY WAS TRANSPORTED TO ARKANSAS STATE CRIME LAB FOR A FULL AUTOPSY. THE NEXT-OF-KIN NOTIFICATION WAS MADE BY CORPORAL GORDON SEAWOOD OF THE ARKANSAS STATE POLICE TO FANESHA TILSON PHILLIPS (SISTER OF DECEASED) AT 9:35 AM.

TOXICOLOGY:  A SEARCH WARRANT WAS ISSUED BY ARKANSAS COUNTY PROSECUTOR TIM BLAIRE AND SIGNED BY ARKANSAS COUNTY CIRCUIT COURT JUDGE DAVID HENRY TO OBTAIN A BLOOD SPECIMEN FROM THE DRIVER OF VEHICLE 1.  A BLOOD SPECIMEN AND URINE SAMPLE WERE OBTAINED FROM THE DRIVER AT DEWITT MEDICAL CENTER. THE BLOOD AND URINE WILL BE SUBMITTED TO THE ARKANSAS STATE CRIME LAB FOR TOXICOLOGICAL ANALYSIS (RESULTS ARE PENDING AT THE TIME OF THIS REPORT).

**547681**

**ARKANSAS MOTOR VEHICLE CRASH REPORT**
**NARRATIVE**

Page [ 10 ] of [ 11 ]

Crash Report # [ 010920036 ]

ADDITIONAL INFORMATION:  THE COMPLETE CRASH REPORT AND ATTACHMENTS WILL BE ON FILE AT ASP TROOP E HEADQUARTERS IN PINE BLUFF, ARKANSAS.  ANY ADDITIONAL INFORMATION WILL BE ADDED TO THIS REPORT AS A SUPPLEMENT AS THE INFORMATION IS RECEIVED.  A COPY OF THIS COLLISION REPORT, ALONG WITH ARKANSAS STATE POLICE CRIMINAL INVESTIGATION DIVISION CASE FILE ASP-2020-1090, WILL BE FORWARDED TO ARKANSAS COUNTY PROSECUTING ATTORNEY TIM BLAIR FOR PROSECUTORIAL REVIEW.



547681

ARKANSAS MOTOR VEHICLE CRASH REPORT
DIAGRAM

Scene #
1

Page 11 of 11

Crash Report # 010920036

CRASH REPORT - DIAGRAM

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

UNITED SECURITY HEALTH AND CASUALTY                    PLAINTIFF
INSURANCE COMPANY

v.                              No. 2:23cv 35-BSM

DEONTA MILLER, LECEEDRIC HUNTER, TERESA HAWKINS,       DEFENDANTS
As Administratrix for the ESTATE of JEREMY TILSON, Deceased,
DEVON BEDFORD, CARLTON OTEY, and TEKILLIA HAMMOND

**EXHIBIT E TO COMPLAINT FOR DECLARATORY JUDGMENT**

| Incident # | 20-02251 | **Helena - West Helena Police Department** | | Report Date | 09/18/20 |
|---|---|---|---|---|---|
| Page | 1 of 2 | Incident Report | | Report Time | 12:06 PM |

| Status | Exception Clearance | Date | Reporting Officer | ORI/Agency |
|---|---|---|---|---|
| Active | | Not Applicable | 209  Bryant, Amoson | AR0540100 |

| | Assigned Officer | | Entered By | Approving Officer |
|---|---|---|---|---|
| | Bryant, Amoson | | r.orr | |

| | Assisting Officers | | | |
|---|---|---|---|---|

### Complainant

| SSN/ID/TIN | Title | Name | | DOB | Age | Sex | Resident Status |
|---|---|---|---|---|---|---|---|
| ** MASKED ** | | Hammond, Tekillia Quansha | | ** MASKED ** | 33 | F | Unknown |

| Race  Black / African American | Ethnicity  Unknown | Home Phone  ** MASKED ** | Work Phone  ** MASKED ** | Other Phone  ** MASKED ** | DL (#, ST)  ** MASKED ** |
|---|---|---|---|---|---|

| US Citizen  Yes | Legal Alien | Doc Type | Immig Doc # | Nationality |
|---|---|---|---|---|

| Home Address  623 N 6Th ST,Helena-West Helena, AR 72390 | Employer |
|---|---|

| Work Address | Occupation |
|---|---|

### Offenses

| Incident Location  326 N 6Th ST  Helena-West Helena, AR 72390 | Zone |
|---|---|

| Earliest Possible Date  09/18/2020 | Time  12:06 | Latest Possible Date  09/18/2020 | Time  12:06 | |
|---|---|---|---|---|

| # | Statute/Code | Description | | Fel/Misd | Att/Comp | Loc | Bias | | Wpn | CATypes |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 5-36-108 | UNAUTHORIZED USE OF A VEHICLE | | Misd | Completed | 25 | 88 | | 99 | |

| MO | | Method Of Entry  n/a | # Prems  0 |
|---|---|---|---|

| Location Types | | Bias Motivation Codes | |
|---|---|---|---|
| 01 Air/Bus/Train Terminal | 13 Hwy/Road/Alley | ANTI- | 43 Lesbian, Gay, Bisexual, or Transgender, Mixed Group (LGBT) |
| 02 Bank/S&L | 14 Hotel/Motel | 11 White | 23 Protestant |
| 03 Bar/Night Club | 15 Jail/Prison | 12 Black or African American | 24 Islamic (Muslim) |
| 04 Church/Synag/Temple | 16 Lake/Waterway | 13 American Indian or Alaska Native | 25 Other Religion |
| 05 Commercial/Off Bldg | 17 Liquor Store | 14 Asian | 26 Multi-religious group |
| 06 Construction Site | 18 Parking Lot/Garage | 15 Multi-races, Group | 27 Atheist/Agnostic |
| 07 Convenience Store | 19 Rental Storage Facility | 16 Native Hawaiian or Other Pacific Islander | 31 Arab |
| 08 Dept/Discount Store | 20 Residence/Home | 21 Jewish | 32 Hispanic or Latino |
| 09 Drug Str/Dr Off/Hosp | 21 Restaurant | 22 Catholic | 33 Not Hispanic or Latino |
| 10 Field/Woods | 23 Service/Gas Station | | 41 Gay (male) |
| 11 Govt/Public Bldg | 24 Specialty Store | | 42 Lesbian |
| 12 Grocery/Supermarket | 25 Unknown/Other | | 44 Heterosexual |
| | 37 Abandoned/Condemned Structure | | 45 Bisexual |
| | 38 Amusement Park | | 51 Phys Disability |
| | 39 Arena/Stadium/Fair grounds/Coliseum | | 52 Mental Disability |
| | 40 ATM Separate from Bank | | 61 Male |
| | 41 Auto Dealership | | 62 Female |
| | 42 Camp/Campground | | 71 Transgender |
| | 44 Daycare Facility | | 72 Gender Non-Conforming |
| | 45 Dock/Wharf/Freight/ Modal Terminal | | 88 None |
| | 46 Farm Facility | | 99 Unknown |
| | 47 Gambling Facility/Casino/Race Track | | |
| | 48 Industrial Site | | |
| | 49 Military Installation | | |
| | 50 Park/Playground | | |
| | 51 Rest Area | | |
| | 52 School - College/University | | |
| | 53 School - Elementary/Secondary | | |
| | 54 Shelter - Mission/Homeless | | |
| | 55 Shopping Mall | | |
| | 56 Tribal Lands | | |
| | 57 Community Center | | |
| | 58 Cyberspace | | |
| | New/Used | | |

| Suspected Of Using  None | Criminal Activity Types | | Weapon Type(s) | |
|---|---|---|---|---|
| | B Buying/Receiving | C Cultivating/Manuf/Publishing | 11 Firearm (Auto) | 20 Knife/Cutting Instr |
| | P Possessing/Concealing | O Operating/Promoting/Assisting | 12 Handgun (Auto) | 30 Blunt Object |
| | D Distributing/Selling | T Transport/Import/Transmit | 13 Rifle (Auto) | 35 Motor Vehicle |
| | E Exploiting Children | U Using/Consuming | 14 Shotgun (Auto) | 40 Personal Weapons |
| | | | 15 Other Firearm | 50 Poison |
| | A Simple/Gross Neglect | I Intentional Abuse & Torment | | 60 Explosives |
| | F Organized Abuse | S Sexual Animal Abuse | | 65 Fire/Incendiary Device |
| | | | | 70 Drugs/Narc./Sleeping Pills |
| | | | | 85 Asphyxiation |
| | | | | 90 Other |
| | | | | 95 Unknown |
| | | | | 99 None |

*Copyright Relativity Inc.© - RPS(Relativity Public Safety)*

**Printed : 10/11/2022 12:51:55 PM**

| Incident # | 20-02251 | **Helena - West Helena Police Department** | Report Date | 09/18/20 |
|---|---|---|---|---|
| Page | 2 of 2 | Incident Report | Report Time | 12:06 PM |

**Victim #1** ☑ Is Complainant   Event #s Related 1

| SSN/ID/TIN | Title | Name | | DOB | Age | Sex | Resident Status |
|---|---|---|---|---|---|---|---|
| ** MASKED ** | | Hammond, Tekillia Quansha | | ** MASKED ** | 33 | F | Unknown |

| Race | Black / African American | Ethnicity | Unknown | Home Phone | ** MASKED ** | Work Phone | ** MASKED ** | Other Phone | ** MASKED ** | DL (#, ST) | ** MASKED ** |
|---|---|---|---|---|---|---|---|---|---|---|---|

| US Citizen | Legal Alien | Doc Type | Immig Doc # | Nationality |
|---|---|---|---|---|
| Yes | | | | |

| Home Address | Employer |
|---|---|
| 623 N 6Th ST,Helena-West Helena, AR 72390 | |

| Work Address | Occupation |
|---|---|

| Victim Type | Injury Type | Aggravated Assault/Homicide Circumstances | Relationship To Suspect |
|---|---|---|---|
| Individual | None, | None | #1 N/A |

| Justifiable Homicide Circumstances | Taken to: (Hospital Name) |
|---|---|
| None | |

**Injury Description**

**Suspect #1**

| SSN/ID/TIN | Title | Name | | DOB | Age | Sex | Resident Status |
|---|---|---|---|---|---|---|---|
| ** MASKED ** | | Otey, Carlton | | ** MASKED ** | 28 | M | Resident |

| Race | Black / African American | Ethnicity | Not Hispanic/Latino | Home Phone | ** MASKED ** | Work Phone | ** MASKED ** | Other Phone | ** MASKED ** | DL (#, ST) | ** MASKED ** |
|---|---|---|---|---|---|---|---|---|---|---|---|

| US Citizen | Legal Alien | Doc Type | Immig Doc # | Nationality |
|---|---|---|---|---|
| Yes | | | | |

| Home Address | Employer |
|---|---|
| 534 Elm ST,Helena, AR 72342 | |

| Work Address | Occupation |
|---|---|

| Height | Weight | Eyes | Build | AKA |
|---|---|---|---|---|
| - | - | | | |

**Vehicles**

| Involvement | 1 None 2 Burned | 3 Counterfeited/Forged | 5 Recovered 6 Seized | 7 Stolen 8 Unknown | 9 Crime Location 10 Suspect Vehicle | Category | 01 Aircraft 03 Auto | 05 Buses 24 Other 37 Trucks | 39 Watercraft |
|---|---|---|---|---|---|---|---|---|---|

| Involvement | Category | Tag # | Tag Yr | State | Tag Type | VIN | NCIC Ref # |
|---|---|---|---|---|---|---|---|
| Stolen | 03 | 846 ZEA | 2021 | AR | Passenger Automobile | 1GYEC63868R202604 | |

| Year | Make | Model | Style | Primary Color | Secondary Color |
|---|---|---|---|---|---|
| 2008 | CADILLAC | ESCALADE | | White | |

| Owner | Description | Est. Value | Evidence # | Impounded | Towed By |
|---|---|---|---|---|---|
| C0: Hammond, Tekillia Quansha | | $8,000.00 | | No | |

| Insurance Company | Policy Number |
|---|---|
| Jupiter | 18-04-0011823-00 |

**Narrative & Statements**

**Narrative - Bryant, Amoson - 9/18/2020 (Initial)**

On September 18, 2020 Tekillia Hammond came to the police department to report that her car had been stolen from her residence. Tekillia informed me that she went to work at 6 am and she was informed that her truck was involved in an accident in Dewitt, Arkansas. Tekillia was informed that the driver was Carlton Otey and she never gave him permission to drive the vehicle at no point. This investigation has been turned over to GIB.

*Copyright Relativity Inc.© - RPS(Relativity Public Safety)*

**Printed : 10/11/2022 12:51:55 PM**

# Dispatch Call Detail

## Call #: C286530 - WALK UP COMPLAINT

**Received Date/Time:** 09/18/2020 12:06:34          **Taken By:** Orr, Rose
**Cleared Date/Time:** 09/18/2020 13:26:59          **Caller Name** HAMMOND, TEKILLIA
**Cleared By:** Orr, Rose                            **Phone:** (662) 592 - 1544
                                                     **Caller Loc.:** 326 N. 6TH STREET

**Location:** 326 N 6Th ST
West Helena, AR 72390

### Units Dispatched

| | Dispatched | Enroute | Arrived | Transport | Trans Dest | Cleared | At Station | Mileage | Trns To |
|---|---|---|---|---|---|---|---|---|---|
| 1101 - Bryant, Amoson (HWHPD) | 09/18/2020 12:06:59 | | | | | 09/18/2020 13:26:59 | | | |

### Narrative

| Date/Time | Dispatcher | Narrative |
|---|---|---|
| 09/18/2020 12:10:57 | Orr, Rose | UNAUTHORIZED USE BY CARLTON OTEY 2008 CADILLAC ESCALADE WHITE IN CO.OR |

### Dispositions

Incident Report,

### Incidents

| Agency | Incident | Officer |
|---|---|---|
| HWHPD | 20-02251 | Bryant, Amoson |